**ORIGINAL APPALACHIAN ARTWORKS, INC.,
Plaintiff,**

v.

**YUIL INTERNATIONAL TRADING CORP., et al. (as to Yuil International Trading Corp. and Hwan-Chul Kim), Defendants.**

**No. 84 Civ. 4962 (ADS).**

United States District Court,
S.D. New York.

March 11, 1985.

Wyatt, Gerber, Shoup, Scobey & Badie, New York City, for plaintiff; Bruce N. Proctor, New York City, of counsel.

Jhinu C. Jung, New York City, for defendants Yuil Intern. Trading Corp. and Kim.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Defendants Yuil International Trading Corp. ("Yuil") and Hwan-Chul Kim (the president of Yuil) have moved, pursuant to Fed.R.Civ.P. 60(b), to set aside a default judgment entered against them. For the reasons set forth below, that motion is denied.

Plaintiff Original Appalachian Artworks ("OAA") is the owner of the copyright to the enormously popular "Cabbage Patch Kids" line of soft-sculpture dolls. On July

12, 1984, OAA filed a complaint alleging copyright infringement, unfair competition, common-law trademark infringement, and dilution against fourteen defendants, whom it separated into nine "groups of common interest." Yuil and Kim constituted one such group, because Kim "is the principal of Yuil." Affidavit of Bruce N. Proctor in Support of Plaintiff's Application for Award of Damages ¶ 24 (Jan. 3, 1985). On October 4, 1984, this court entered a default judgment against Yuil and Kim, since neither had appeared, answered, or made any motion with respect to the complaint. The court further ordered that the matter be referred to a magistrate for determination of damages, attorney's fees, and costs. A hearing on these matters was conducted by Magistrate Sharon E. Grubin on January 10, 1985; the matter is now pending before her.

On January 18, 1985, defendants moved to set aside the default judgment on the ground that excusable neglect was responsible for the delay in filing a response to the complaint. Kim's affidavit in support of defendants' motion raises two distinct excuses for defendants' failure to respond. First, he claims that plaintiff's attorneys, during his appearance at a deposition on July 16, 1984, led him to believe that if he cooperated with them—presumably in tracking down the sources of the counterfeit Cabbage Patch merchandise seized from Yuil—plaintiff would drop its action against him and Yuil. Therefore, he claims, he did not promptly contact a lawyer to defend him. Affidavit of Hwan-Chul Kim ¶¶ 3–7 (Jan. 18, 1985). Second, Kim claims that, once he realized the need for legal representation, he had difficulty obtaining a lawyer willing to handle his case. One lawyer told him, after discussing the case with plaintiff's attorneys, that his defense had been substantially weakened by his having consented to the entry of a preliminary injunction. *Id.* ¶ 10. Two others told him that the costs of defending the action exceeded the extent of defendants' potential liability and therefore refused to represent him. *Id.* ¶¶ 11–12. Finally, plaintiff obtained the counsel who has pre-

pared the motion now before the court. *Id.* ¶ 14.

▉ Whether good cause has been shown for setting aside a default judgment turns on three questions: (i) whether the default was willful; (ii) whether the moving party has presented a meritorious defense; and (iii) whether the party who secured the default would be prejudiced by setting it aside. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983). Despite the "strong policies favoring the resolution of genuine disputes on their merits," *id.,* the equities in this case tip decidedly in favor of preserving plaintiff's default judgment.

### I. *Defendants' Willfulness*

Defendants have failed to demonstrate that their failure to respond was excusable under either of their theories. Defendants' first claim—that they were led to believe by plaintiff that it would drop its action if Kim appeared at a deposition and consented to a preliminary injunction—is essentially one of fraud or misrepresentation by the adverse party. Fed.R.Civ.P. 60(b)(3); *see* Defendants' Memorandum at 1. This claim is meritless. Counsel for plaintiff has submitted portions of Kim's deposition taken on July 16, 1984. Affidavit of Bruce N. Proctor in Opposition to Plaintiff's Motion to Set Aside the Default Judgment, Exh. A (Jan. 29, 1985). Although the transcript suggests that Kim's negligence may be due in part to his difficulties in understanding English, it also clearly shows that plaintiff's counsel repeatedly advised Kim to obtain a lawyer, *e.g.,* Kim Deposition Tr. at 44, 47, 48, 49, 51, 55, specifically to help him understand the legal ramifications of the action against him. *See, e.g., id.* at 44 ("I am suggesting to you now that you call a lawyer. I think these papers are very important and you should make sure you understand."). Moreover, it also reflects that as early as July 16, plaintiff made clear its intention to seek monetary damages even as part of a settlement. Plaintiff's counsel repeated his advice to Kim to

seek representation by explaining that "I still think you should get a lawyer, even if you sign the [consent to the preliminary injunction], because we'll be asking money damages, we'll be asking you for money to end this case. We'll ask you for maybe 10,000, maybe $20,000," *id.* at 49, and further stated that the lawsuit might eventually "hurt" Kim because "[plaintiff] might ask for money.... If [plaintiff] can show by talking to other people that you have sold Cabbage Patch Kids products, [it] might ask you for five or $10,000 or maybe more," *id.* at 51–52.

Plaintiff also later sent a letter to Kim, who had failed to provide documents which he claimed exonerated him and Yuil, stating that defendants were in default and "strongly advis[ing] you to seek advice of counsel." Letter from Gerard F. Dunne to Hwan-Chul Kim (Sept. 20, 1984) (Plaintiff's Memorandum, Exh. B). This letter was followed by another letter a month later, informing Kim that a default judgment had been entered and that the case was therefore being referred to a magistrate to assess damages, and again "strongly suggest[ing]" that Kim "seek the advice of an attorney." Letter from Gerard F. Dunne to Hwan-Chul Kim (Oct. 16, 1984) (Plaintiff's Memorandum, Exh. C). Defendants made no response of any kind to this letter, despite its express warning.

■ No evidence has been presented to suggest that plaintiff in any way misrepresented the legal situation in which defendants found themselves. To the contrary, plaintiff's counsel went out of his way to stress to Kim the importance of seeking representation. In any event, the lack of legal sophistication on the part of a corporation and its principal simply cannot form the basis of a claim of excusable neglect or fraud for purposes of Rule 60(b). *See Residential Reroofing Local 30–B v. Mezicco*, 55 F.R.D. 516, 517–18 (E.D.Pa. 1972) (defendant's claim that he "was not cognizant of the importance of being represented by counsel until after the judgment was entered" insufficient to justify vacating default judgment). Thus, defendants are not entitled to have the default judgment vacated on grounds of fraud or misrepresentation.

■ Moreover, Kim's professed ignorance of the intricacies of the law may not be as complete as his motion papers suggest. Kim claims that "[p]rior to this action, neither Yuil nor I had ever been sued by anyone before and therefore, neither Yuil nor I had had any reason to contact a lawyer in connection with defense of any lawsuit." Kim Affidavit ¶ 7. Plaintiff points out, however, that shortly before this suit was filed, Kim and Yuil had been sued in another copyright infringement action, *Warner Brothers, Inc. v. Yuil International Trading Corp. and Hwan-Chul Kim*, 84 Civ. 4688 (ADS). Defendants did retain counsel in that case, at the very least several months before counsel was retained in the instant case. *See* Plaintiff's Memorandum at 5 & Exh. A. Kim's misstatement in his affidavit casts serious doubt on the good faith of his claim of ignorance and thus on his claim that his default was not willful. A party's decision to ignore the dangers attendant to litigation cannot serve to excuse his default. *See Usery v. Weiner Brothers, Inc.*, 70 F.R.D. 615, 617 (D.Conn.1976); *Residential Reroofing Local 30–B*, 55 F.R.D. at 518.

■ Defendants' second claim is that their failure to appear, answer, or move was due to the failure of Kim's repeated efforts to find a lawyer. Kim Affidavit ¶¶ 9–12. This claim is similarly meritless in light of the facts of this case. A bona fide effort to find counsel is certainly relevant to the willfulness of a party's default. *See Zuck*, 710 F.2d at 92–95. But where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable. *Compare Zuck*, 710 F.2d at 93, 95 (defaulting individual defendant had written to court asking assistance in obtaining counsel and describing her position in lawsuit and later filed pro se answer) *with Weiner Brothers*, 70 F.R.D. at 617 (defendant's decision that fees charged by

lawyers with whom he consulted were too high to warrant retaining counsel did not justify his failure to appear); *cf. Rinieri v. News Syndicate Co.*, 385 F.2d 818, 823 (2d Cir.1967) ("If a party lacks funds it is not given to him to decide *ex parte* that he is justified in not prosecuting his suit and is thus free to ignore the rules of the court."). In sum, defendants' failure to respond is not the type of nonculpable conduct for which relief under Rule 60(b) was designed.

## II. *The Meritoriousness of the Claimed Defenses*

█ The lack of a meritorious defense to plaintiff's complaint provides a second basis for denying defendants' motion. Despite defendants' claim that they have "[full] and meritorious defenses to the cause of action alleged in plaintiff's complaint," Motion at 1, Kim's own affidavit only claims, with respect to defendant Yuil, that it has "a just and complete defense to *most* of the allegations contained in the complaint." Kim Affidavit ¶ 15 (emphasis added); *see also* Defendants' Memorandum at 2 ("plaintiff's claims against [defendants] are *in large part* false") (emphasis added). This failure sufficiently even to allege that defendant Yuil would prevail at trial means that "there would be no point in setting aside the default judgment" against Yuil. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984).

Even if defendants' papers are interpreted to claim that they have a full defense against the complaint, defendants have failed to satisfy the burden required by Rule 60(b). Although defendants are not required to show that their defenses will in fact prevail at trial, they are required to state defenses which are legally sufficient to defeat plaintiff's claim. *See Horn v. Intelectron Corp.*, 294 F.Supp. 1153, 1155–56 (S.D.N.Y.1968); *accord United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195; *In re Stone*, 588 F.2d 1316, 1319 (10 Cir.1978).

This defendants have failed to do. "Unlike the simple notice pleading required in original actions, the rule relating to relief from default judgments contemplates more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense." *In re Stone*, 588 F.2d at 1319. This court has explicitly held that the "conclusory statement that the two defendants 'have a just and meritorious defense' .... is manifestly not sufficient," and that "[d]efendants must 'state underlying facts to support [their] claim of a meritorious defense.'" *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139, 140–41 (S.D.N.Y.1970) (quoting *Consolidated Masonry Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 252 (4th Cir.1967)).

Defendants' proposed answer contains four affirmative defenses. None of these defenses is adequate to justify relief under Rule 60(b). The first defense—that defendant Kim "has never engaged in any of the acts alleged in the Plaintiff's complaint"—is precisely the kind of conclusory statement condemned by *Robinson, Stone,* and *United States v. $55,518.05 in U.S. Currency.* The fourth defense—that at "all times mentioned in the complaint, [Kim] has acted strictly in his capacity as an officer of Yuil International Trading Corp." and not as an individual—is totally meritless. Both federal and New York law clearly provide that a corporate officer who participates in the commission of a tort, even if he acts of behalf of the corporation and in the course of his corporate duties, may normally be held individually liable. *See National Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F.Supp. 339, 341 (S.D.N.Y.1985); *Polyglycoat Corp. v. C.P.C. Distributors, Inc.*, 534 F.Supp. 200, 204 (S.D.N.Y.1982); *Bailey v. Baker's Air Force Gas Corp.*, 50 A.D.2d 129, 376 N.Y.S.2d 212 (3d Dep't 1975). Kim has failed to point to a single fact that might undermine the applicability of this well established rule.

Defendants' other two defenses rely on the claim that on July 16, 1984, plaintiff's attorney made representations to Kim that led him not to vigorously defend this action

and that therefore either constitute an accord and satisfaction or collaterally estop plaintiff from seeking monetary damages. While a Rule 60(b) motion is normally not the place to litigate the truth of a claimed defense, *In re Stone*, 588 F.2d at 1319, defendants' factual allegations in this case are inadequate. Plaintiff has provided a transcript of what it claims are the relevant portions of Kim's deposition, and the transcript is bare of any representation that could possibly render defendants' belief reasonable. As we have already noted, *supra* pp. 3–4, as early as July 16, plaintiff had made clear to defendants its intention to seek damages. *See* Kim Deposition Tr. at 49, 51 (containing warnings by plaintiff's counsel that plaintiff intended to seek monetary damages). Under these circumstances, defendants have failed to allege specific facts that could enable them to make out a complete defense. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195.

### III. *The Possibility of Prejudice to the Plaintiff*

■ Defendants' final claim is that plaintiff will not be prejudiced by a grant of the relief they seek, largely because Kim and Yuil have already consented to injunctive relief. Plaintiff responds that it will be prejudiced by the substantial delay in the entry of a final judgment that vacating the default would entail. While it is normally true that "delay alone is not a sufficient basis for establishing prejudice," *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983), the peculiar posture of this suit does pose the danger of prejudice to plaintiff. The damages inquest has already been held, and Magistrate Grubin has set a briefing schedule on the issue of damages. Defendants waited until after the commencement of the damages proceeding to try to reopen the issue of liability. Under these circumstances, it would prejudice plaintiff to vacate the default judgment. Defendants, on the other hand, still have the opportunity in those proceedings to prove that damages should not be awarded.

### IV. *Conclusion*

For the reasons stated above, defendants' motion to vacate the default judgment entered on October 4, 1984 is denied.

SO ORDERED.