**ILGWU NATIONAL RETIREMENT FUND, Sol C. Chaiken and Joseph Moore, Plaintiffs,**

v.

**EMPIRE STATE MILLS CORPORATION, Defendant.**

No. 86 Civ. 3028(JMC).

United States District Court, S.D. New York.

Aug. 10, 1988.

Myerson & Kuhn, New York City by Marc E. Richards, for plaintiffs.

Fish & Neave, New York City by Mitchell P. Brook, for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendant's motion to set aside the default judgment is denied. Fed.R.Civ.P. 55(c) and 60(b).

## BACKGROUND

Plaintiff International Ladies Garment Workers' Union ["ILGWU"] National Retirement Fund [the "Fund"] is an employee pension benefit plan of the ILGWU [the "Union"], a 250,000 member union. The Fund is an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ["ERISA"] § 3(2) and a multiemployer plan within the meaning of § 3(37) of Erisa. Plaintiffs Sol C. Chaiken and Joseph Moore are trustees of the Fund who exercise discretionary authority, control and responsibility in the management and administration of the Fund and the disposition of the Fund's assets.

For over twenty years defendant Empire State Mills Corporation ["Empire"] was a New York clothing manufacturing company employing less than twenty people. It is undisputed that defendant entered into a series of collective bargaining agreements with the Union under which it was obligated to pay fringe benefit contributions to various multiemployer fringe benefit funds including the Fund. The Union was the collection agent for all of the fringe benefit funds including the Fund.

Sometime in the mid–1980s Empire became delinquent in its obligation to remit fringe benefit contributions to the Union. In accordance with the collective bargaining agreement the Union made a request for arbitration. Empire admitted its indebtedness and by letter agreement promised to pay the contributions plus interest.

In June 1985 the Union had to again request an arbitration hearing alleging further delinquencies in Empire's contributions to the Union. On August 14, 1985, after holding two hearings on the matter, the arbitrator issued his opinion which found that Empire's fringe benefit contributions were $2,809.64 in arrears. Empire did not appeal this decision, but rather, satisfied the judgment.

In January 1985, the Fund sent a letter to Empire claiming that Empire owed $23,-589 in withdrawal liability, subject to actuarial adjustments, based on Empire's withdrawal from the Fund in 1984. The letter indicated that this amount had been arrived at pursuant to 29 U.S.C. § 1391(b) based upon the amounts that Empire had been obligated to contribute to the Fund between 1975 and 1983. The letter stated that the payments were due on a quarterly basis over a two year period. It explained that Empire had ninety days to request a review of the liability determination, but that any dispute arising out of the Fund's determination must be resolved through arbitration. In addition, the letter informed Empire that arbitration had to be initiated within sixty days after the earlier of (a) the date of the Fund's notice of findings and determination after review, or (b) 120 days after Empire's request for a review of the Fund's liability determination.

In June 1985, after Empire failed to make its first scheduled quarterly payment, the Fund sent a second letter to Empire. This letter warned Empire that unless it made all past due and current payments within sixty days, the Fund, as permitted by 29 U.S.C. § 1399(c)(5), would

immediately commence proceedings to collect the full outstanding amount of withdrawal liability. Empire failed to respond to the Fund's letters and neither requested a review of the liability determination nor initiated arbitration.

In April 1986, the Fund commenced an action claiming that Empire was in default pursuant to 29 U.S.C. § 1399(c)(5) and seeking immediate payment of $23,589 in withdrawal liability, plus interest, liquidated damages, costs and attorneys' fees. The summons and complaint were properly served on Empire on May 26, 1986. Mr. David I. Brook, president of Empire, represented Empire *pro se.*

Empire never appeared, answered or made any motion with respect to the complaint and informal discussions between the parties as to a possible settlement of the dispute proved fruitless. On October 23, 1986 the Court entered a default judgment against Empire for the full amount of its withdrawal liability, plus interest, liquidated damages, attorneys' fees and costs. Over eleven months later, Empire moved to set aside the default judgment asserting that fraud and misrepresentation and/or mistakes were responsible for its failure to file an answer. Empire raises two distinct excuses for its failure to respond.[1] First, Empire claims that plaintiffs' attorney led it to believe that the matter had been settled by an oral contract. Second, Empire asserts that its *pro se* status, plaintiffs' misrepresentations and past practices between the parties caused it to believe that it had properly answered.

### DISCUSSION

Rule 55(c) of the Federal Rules of Civil Procedure provides that a district court may set aside an entry of default for good cause or in accordance with Rule 60(b). Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part that:

upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....

Fed.R.Civ.P. 60(b).

■ In determining whether to set aside a judgment of default a court must consider (1) whether the default was wilful, (2) whether the moving party has presented a meritorious defense, and (3) whether the party who secured the default would be prejudiced by setting it aside. *See Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984); *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983). Despite "the strong policies favoring the resolution of genuine disputes on their merits," *see Traguth*, 710 F.2d at 94, the equities in this case tip decidedly in favor of preserving plaintiffs' default judgment.

### I. *Defendant's Willfulness*

It is undisputed that service of the summons and complaint in this action was validly carried out. Empire argues, however, that due to the past practices of the parties and plaintiffs' misrepresentations it believed that it could answer the complaint by telephone. This argument is without any basis in law or fact, and thus, is without merit.

"[T]he lack of legal sophistication on the part of a corporation and its principal simply cannot form the basis of a claim of excusable neglect or fraud for purposes of

---

1. In addition, Empire asserts that its failure to appear or answer was due to mistakes it made while representing itself *pro se.* Empire's alleged mistakes, however, embody claims that are essentially identical to its fraud and misrepresentation claims. The Court, therefore, will not address these claims separately.

Rule 60(b)." *Original Appalachian Artworks, Inc. v. Yuil International Trading, Inc.,* 105 F.R.D. 113, 116 (S.D.N.Y.1985) (citing *Residential Reroofing Local 30-b v. Mezicco,* 55 F.R.D. 516, 517–18 (E.D.Pa. 1972)). More importantly, the law is well established that "a corporation may not appear in a lawsuit against it except through an attorney." *Securities Exchange Commission v. Research Automation Corp.,* 521 F.2d 585, 589 (2d Cir.1975); *see also Clee v. Remillard Building, Inc.,* 649 F.Supp. 1127 (D.Conn.1986). Empire, therefore, despite having actual notice of the suit, never appeared in the action.

■ Empire has failed to demonstrate that its failure to appear was excusable. Empire admits that it made no attempt to hire an attorney as the company had ceased operations and lacked the funds. A party's lack of funds, however, does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament. *Compare Original Appalachian Artworks,* 105 F.R.D. at 116–17 (defendants' difficulty in obtaining an attorney did not excuse failure to answer or appear); *Usery v. Weiner Bros., Inc.,* 70 F.R.D. 615, 617 (D.Conn.1976) (defendant's decision that attorneys' fees were too high to warrant retaining counsel did not justify failure to appear) and *Rinieri v. News Syndicate Co.,* 385 F.2d 818, 823 (2d Cir.1967) ("If a party lacks funds it is not given to him to decide *ex parte* that he is justified in not prosecuting his suit and is free to ignore the rules of the courts.") *with Traguth,* 710 F.2d at 95 (default vacated as defendant had written to court explaining position and seeking assistance in obtaining counsel and had filed belated *pro se* answer.)

■ Moreover, no evidence has been presented to suggest that plaintiffs in any way misrepresented the legal situation in which Empire found itself.[2] Indeed, Empire asserts only that "plaintiffs said and did nothing to indicate that [telephoning their counsel] was not an appropriate approach to answering." Affidavit of David I. Brook, ¶ 15, 86 Civ. 3028 (JMC) (S.D.N.Y. Oct. 22, 1987). Furthermore, plaintiffs' attorney specifically informed Empire that it would delay seeking a default judgment until after Brook returned from vacation in the hopes that he might consider consenting to judgment, hiring counsel or settling the matter. *See* Defendant's Memorandum in Opposition to Motion to Vacate Default Judgment, Exh. 2, 86 Civ. 3028 (JMC) (S.D.N.Y. Nov. 19, 1987). "A party's decision to ignore the dangers attendant to litigation cannot serve to excuse his default." *Original Appalachian Artworks,* 105 F.R.D. at 116 (citing cases). Thus, Empire's failure to appear is not the type of nonculpable conduct for which relief under Rule 60(b) was designed.

Similarly, Empire's second claim—that it was led to believe that there had been an oral settlement of the matter—is without merit. Empire asserts that an attorney representing plaintiffs informed him that plaintiffs had concluded that (a) the suit was a hardship for defendant, (b) Brook's deposition had satisfied them that the action was not worth pursuing, and therefore, (c) neither Empire nor Brook would be hearing any more about the matter. *See Brook Affidavit* at ¶ 20. Empire further contends that in consideration for plaintiffs discontinuing the action, Empire agreed not to pursue its claims against plaintiffs and the Union. *Id.* at ¶ 21.

The Court finds this argument utterly implausible. By statute, an employer who withdraws from a plan is liable for withdrawal liability. *See* 29 U.S.C. § 1381. The trustees of the plan have a fiduciary duty to enforce that obligation. *See* 29 U.S.C. § 1382. If a trustee fails to dis-

---

2. Although inartfully pleaded, Empire argues that it appeared in this action for purposes of Fed.R.Civ.P. 55(b)(2), and therefore, it was entitled to written notice three days prior to the entry of judgment. The rule provides that, "[i]f a party against whom judgment by default is sought has appeared in the action, he ... shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." Fed.R.Civ.P. 55(b)(2). As already noted by the Court, however, Brook could not represent Empire as he is not an attorney, and therefore, Empire never made an appearance in this action. Thus, Empire was not entitled to notice of the impending default.

charge his duties with the care, skill and diligence of a prudent person in a similar situation he can be held personally liable for any losses suffered by the plan. *See* 29 U.S.C. § 1109. Accordingly, the Court can only conclude that the parties did not enter into an oral settlement.

█ This is especially true in light of the frivolous nature of Empire's purported claims against plaintiffs. As Empire never appeared in the action any claim for litigation costs would be based entirely on speculation and conjecture. Moreover, it is beyond peradventure that the Fund and the Union are two separate and distinct entities. Empire fails to allege any facts to establish that the Union, in blockading Empire, was acting as an agent for the Fund.[3] Empire's failure to pursue a claim against the Union for damages arising out of that blockade would not, therefore, serve as adequate consideration for the Fund's discontinuance of an action mandated by Congress. Thus, Empire is not entitled to have the default judgment vacated on the grounds of fraud, misrepresentation or mistake.

## II. *Meritorious Defenses*

█ An absolute essential criteria to setting aside a default judgment is that the defendant claim with specificity a meritorious defense. *See United States v. Topeka Livestock Auction,* 392 F.Supp. 944 (N.D. Ind.1975). In the instant action, Empire seeks to set aside a default judgment entered against it for $32,114.31 in withdrawal liability, interest, liquidated damages, attorneys' fees and costs due the Fund pursuant to the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. § 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980, ["MPPAA"] 29 U.S.C. § 1381, et seq.

The MPPAA was enacted by Congress in September 1980 to protect participants in multiemployer plans from the loss of their pensions. Under the MPPAA an employer who withdraws from a multiemployer plan, with certain exceptions, is assessed withdrawal liability. That is, the employer is required to continue funding its proportionate share of the plan's unvested benefits.

Upon an employer's withdrawal, the plan sponsor must promptly determine the amount of liability, formulate a payment schedule, notify the employer and make a demand for payment. *See* 29 U.S.C. §§ 1382, 1399(b)(1). The employer may, not later than ninety days after receiving notification of the liability assessment, request that the plan sponsor review the liability determination. *See* 29 U.S.C. § 1399(b)(2)(A). Notwithstanding a request for review, withdrawal liability is payable in accordance with the schedule set forth by the plan sponsor and a failure to pay may result in a demand for immediate payment of the full outstanding liability plus interest. *See* 29 U.S.C. § 1399(c)(5).

The MPPAA further provides that:

Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of—

(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or

(B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. The parties may jointly initiate arbitration within a 180–day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

29 U.S.C. § 1401(a)(1).

Furthermore, the arbitrator's award is subject to judicial review but the arbitra-

---

**3.** Empire's claim that the Fund's action for withdrawal liability was barred by res judicata and collateral estoppel must fail for the same reason. Empire has failed to establish that the Union, in arbitrating a dispute for delinquent fringe benefit contributions was acting as an agent of the Fund. More importantly, an action for delinquent fringe benefit contributions, which arises out of a collective bargaining agreement, could not resolve a dispute over withdrawal liability, which arises by statute. The prior arbitration between the Union and Empire did not, therefore, preclude the instant action.

tor's findings of fact are presumed correct unless rebutted by a clear preponderance of the evidence. *See* 29 U.S.C. § 1401. If no arbitration proceeding is initiated then the plan sponsor may bring an action in state or federal court to collect the amounts due and owing. *See* 29 U.S.C. § 1401(b)(1).

The law is well settled that Congress' mandate to submit to arbitration disputes over withdrawal liability is not an absolute jurisdictional bar, but rather, constitutes an exhaustion of administrative remedies requirement. *See ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879, 886 (2d Cir.1988) (quoting *T.I.M. E.-DC, Inc. v. Management–Labor Welfare & Pension Funds,* 756 F.2d 939, 945 (2d Cir.1985)).

The requirement that a party exhaust all remedies has been waived where the doctrine's policies—the application of the administrative body's superior expertise, promotion of judicial economy and deference to the statutory scheme created by Congress—would not be undermined. *See Management–Labor,* 756 F.2d at 945. Moreover, exhaustion will not generally be required where the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury, the issues presented to the Court revolve solely around statutory interpretation and there are no material issues of fact in dispute or the challenge to the assessment of withdrawal liability raises questions of constitutional law. *See T.I. M.E.-DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund,* 580 F.Supp. 621, 633 (N.D.N.Y.1984) (citations omitted).

In the instant action, plaintiffs argue that the default judgment entered against Empire should not be set aside as Empire waived its right to assert defenses by failing to initiate arbitration proceedings within the statutory time period. In response, defendant argues that the exhaustion requirement should be waived as withdrawal is a condition precedent to withdrawal liability and it had not withdrawn at the time withdrawal liability was assessed against it.

The cases Empire relies on to support this line of reasoning are not controlling as they involved only questions of statutory interpretation. In the majority of cases cited by Empire the court had to determine whether an employer-member had withdrawn from the plan or merely suspended payments while involved in a labor dispute under 29 U.S.C. § 1398(2). *See Sheet Metal Workers' Pension Fund v. Advanced Metal & Welding Corp.,* 654 F.Supp. 219 (N.D.Ga.1986); *Central States Southeast & Southwest Areas Pension Fund v. T.I. M.E.-DC, Inc.,* 639 F.Supp. 1468 (N.D.Tex. 1986); *New York Teamsters,* 580 F.Supp. at 621; *T.I.M.E.-DC, Inc., v. Trucking Employees of North N.J. Welfare Fund, Inc.,* 560 F.Supp. 294 (E.D.N.Y.1983).

In the other cases cited by defendant the court had to determine whether certain retail stores were facilities within the meaning of 29 U.S.C. § 1397(a), *see Meatcutters Union Local 88 v. Del Monte Supermarkets,* 565 F.Supp. 27 (E.D.Mo.1983), whether withdrawal liability may be assessed when an employer sells all of its stock to an employer who assumes the corporations operations, employs most of its employees and continues to make pension plan payments, *see Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Philadelphia,* 787 F.2d 897 (3d Cir.1986), and whether compliance with the transfer provisions of 29 U.S.C. § 1415 are a condition precedent to the assessment of withdrawal liability, *see Management–Labor,* 756 F.2d at 939. Finally, the Sixth Circuit refused to require exhaustion where a plan member's defense to the assessment of withdrawal liability was based on a statute that had not been enacted at the time the employer-member's deadline for initiating arbitration had expired. *See Central State Southeast & Southwest Areas Pension Fund v. 888 Corp.,* 813 F.2d 760 (6th Cir. 1987).

■ More importantly, the law is well established that "[t]he Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability." *Management–Labor,* 756 F.2d at 945. As in the instant action, disputes

concerning a determination that a defendant completely withdrew from a plan is a dispute within the ambit of MPPAA's arbitration provision. *See Sheet Metal Workers,* 654 F.Supp. at 223 fn. 5 (citing cases); *I.A.M. National Retirement Fund, Benefit Plan v. Schulze Tool and Die Co., Inc.,* 564 F.Supp. 1285 (N.D.Cal.1983). Moreover, several Circuits agree that disputes over whether an employer withdrew from a plan prior to the effective date of the MPPAA are disputes that must be arbitrated first. *See Teamsters Pension Trust Fund v. Allyn Transportation Co.,* 832 F.2d 502 (9th Cir.1987); *I.A.M. National Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415 (D.C.Cir.1987); *Warner–Lambert Co. v. United Retail & Wholesale Employer's Teamster Local No. 115 Pension Plan,* 791 F.2d 283 (3rd Cir.1986).

Additionally, the Second Circuit recently determined that the failure to exhaust would not bar a federal suit if (1) no questions of fact or issues of contract determination were raised, (2) the parties would probably seek judicial review of the arbitration decision, (3) the statutory interpretation involved was within the scope of issues Congress had directed to the arbitrator, and (4) the employer-member's time for initiating arbitration had not expired. *See Levy Bros. Frocks,* 846 F.2d at 886.

In the instant action, there is a dispute over a material question of fact—at what point did Empire withdraw from the Fund so as to be subject to withdrawal liability. Thus, an arbitrator skilled in pension and labor matters would have superior expertise to offer and the Court would have benefited from the proper development of the factual record. Moreover, a dispute as to whether and when Empire withdrew from the plan involves the interpretation of 29 U.S.C. § 1383, and thus, falls squarely within Congress' mandate to arbitrate. *See id.* Finally, Empire's time to initiate arbitration has long since expired. "If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability before the time period

to initiate arbitration expires." *Id.* at 886–87.

Empire, by failing to follow the statutory scheme for challenging withdrawal liability effectively departed from the procedures mandated by the legislation, and thus, waived any defenses it may have had to the underlying action. Under the circumstances, therefore, Empire is unable to allege a meritorious defense. In light of this determination the Court need not address Empire's contention that plaintiffs would suffer no prejudice if the default judgment was set aside. Accordingly, Empire's motion to set aside the default judgment is denied.

### CONCLUSION

Defendant's motion to set aside the default judgment is denied. Fed.R.Civ.P. 60(b).

SO ORDERED.