Robert J. RAO, Dan Weiss, Michael Lasalle and Lou Dauber Trustees of the Production Service & Sales District Council Pension Fund, Plaintiffs,

v.

PREST METALS, and Hoffinger Industries, Inc., Defendant.

No. CIV. A. CV 00–3785(DGT).

United States District Court, E.D. New York.

June 27, 2001.

Bruce J. Cooper, Haydon, Straci & Cooper, New York City, for plaintiffs.

Norman S. Moss, Orlando, FL, for defendants.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Robert Rao, Dan Weiss, Michael Lasalle and Lou Dauber, trustees (the "Trustees") of a multi-employer pension fund, brought this action against Prest Metals, one of the employers participating in that fund, and its corporate parent Hoffinger Industries, Inc., ("Hoffinger") to recover the amount owed by Prest Metals in withdrawal liability pursuant to the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"). 29 U.S.C. §§ 1381–99. The Trustees now move for summary judgment.

### Background

Until 1998, Prest Metals operated a facility located in Brooklyn, New York. Pl. Stmt. Mat. Facts Pur. R. 56.1 Loc. Civ. R. ("Pl. 56.1 Stmt"), ¶ 5.[1] Employees at that facility were covered by a multi-employer pension fund, namely the Production Service & Sales District Council Pension Fund (the "Fund"). *Id.* Accordingly, Prest Metals was making regular contributions

---

**1.** Facts are taken from plaintiffs' Rule 56.1 statement because the defendants have failed to provide the court with any Rule 56.1 statement and have further failed to admit or deny any of plaintiffs asserted facts. Accordingly, all of plaintiffs' facts should be deemed admitted. *See* Rule 56.1(c) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party"). To the extent that affidavits submitted by defendants deny or admit certain facts, however, these affidavits will be considered for the purposes of this motion.

to the Fund pursuant to requirements of the MPPAA, which is part of the Employee Retirement Income Security Act of 1974 ("ERISA").

During the summer of 1998, apparently due to financial concerns, Prest Metals moved the Brooklyn facility to New Jersey. Hoffinger Aff., ¶ 4. At that time, plaintiffs, who are the trustees of the Fund, allege that Prest Metals ceased making contributions to the Fund. Pl. 56.1 Stmt, ¶ 7. Although Prest Metals claims in its brief that it never completely withdrew from the plan, it does not appear to deny it ceased making contributions for at least some period of time. Def. Response to Pl. Motion for Summ. J. ("Def.Mem.") at 15.[2] Rather, Hoffinger's Chief Executive Officer, Martin Hoffinger ("Mr.Hoffinger"), states in his affidavit that Prest Metals "has continued and/or sought to continue to forward the requisite payments necessary to maintain membership in the union and the Fund." Hoffinger Aff., ¶ 6. This ambiguous statement is echoed by Norman Moss, attorney for the defendant corporations, in his affidavit. Moss Aff., ¶ 6. Both of these statements seem to admit that, at least for some period of time, Prest Metals ceased contributing to the Plan, although they still "sought" to continue contributing and never intended to completely withdraw.

Believing that Prest Metals had withdrawn from the Fund, Kenneth Briscoe, the Fund manager, sent a letter dated September 29, 1998 to Prest Metals informing it that it had incurred withdrawal liability of approximately $202,000. Cooper Aff., Ex. A. In the letter, Briscoe informed Prest Metals that withdrawal liability payments of $4,249.00 were due each quarter for the next 80 quarters. These payments were to commence on January 1, 1999. The letter further informed Prest Metals that it had the right, within 90 days, to request a review of the assessment of withdrawal liability, identify any inaccuracies in the amount of liability, or furnish any other relevant information. *Id.* Finally, the letter warned Prest Metals that "any dispute arising out of the Fund's determination and review must be resolved through arbitration" and that any arbitration must be initiated within sixty days of the earlier of: (1) the "date of the Fund's notice of findings and determination after any review"; or (2) "120 days after the date of the Firm's request" for review of the assessment of withdrawal liability. *Id.*

Two weeks after the September 29th letter, on October 13, 1998, Prest Metals wrote Briscoe back, stating that it had not withdrawn from the Plan, and that the decision whether to withdraw "has not yet been finalizied [sic] by our owner." Moss Aff., Ex. B. In addition, the letter requested "a full review" of the withdrawal liability and stated that Prest Metals wished to commence an arbitration proceeding. *Id.* Similarly, Mr. Hoffinger, Prest Metals' CEO, wrote to Briscoe on October 21, 1998 and November 10, 1998 to contest the fact that the corporation had withdrawn from the plan. *Id.*, Exs. C, F. In both letters he explained that Prest Metals had moved from Brooklyn to New Jersey, but continued to employ union members who were covered by the plan and did not intend to withdraw.

On November 10, 1998 Briscoe wrote back to Mr. Hoffinger in response to Prest Metals' letters of October 13 and October 21. *See* Briscoe Decl., Ex. F. Although the November 10 letter does not indicate that a full review of the withdrawal liability determination had been conducted, it does

---

**2.** It should be noted that the defendants' brief did not include page numbers, and, accord-ingly, specific page citations to the brief are based on counting from the cover page.

maintain that, despite Prest Metals' assertions to the contrary, the Fund's review of Prest Metals' contribution history revealed that it had indeed withdrawn from the Plan. Further, Briscoe informed Prest Metals in the letter that arbitration may be commenced "by filing a demand for arbitration with the American Arbitration Association in New York." Finally, the letter asked Prest Metals to forward any facts it may have that demonstrated that Prest Metals had not withdrawn. Specifically, it requested any information indicating that Prest Metals still had current obligations to contribute under the Plan or that it was still engaged in covered operations under the Plan.[3]

On November 16, 1998, Mr. Hoffinger wrote back to Briscoe. Moss Aff., Ex. G. In this letter, Mr. Hoffinger again maintained that Prest Metals had not withdrawn from the Plan, and, in support of this position, he listed the contributions Prest Metals had made to the plan in 1998 up to and including October of that year. He concluded the letter by asking:

> Are you filing the "demand for arbitration" with the American Arbitration Association? While I firmly believe this is an unwarranted exercise, I don't want to be put in a position to have waived any of our rights. Upon advice I will submit a request for arbitration on my initiative.

*Id.* Neither party made a request for arbitration in 1998 or 1999. In addition, Prest Metals failed to make any of the withdrawal liability payments.

On February 28, 2000, Briscoe again wrote to Prest Metals regarding its failure to make the required withdrawal liability payments for the past five quarters. Cooper Aff., Ex. C. The letter warned that if the default was not cured in sixty days, the full amount of liability would become immediately due. On March 16, 2000, apparently in response to the February 28 letter, Prest Metals made a formal request for arbitration. *Id.,* Ex. H.

An arbitration proceeding was held, and the arbitrator's decision was issued June 19, 2000. Cooper Aff., Ex. B. The arbitrator found that, by failing to request arbitration within the time period prescribed by ERISA, Prest Metals had waived its right to dispute the finding that it had withdrawn. *Id.* Accordingly, the arbitrator found for the Fund and dismissed Prest Metals' request for arbitration on the issue of withdrawal liability. *Id.*

The Fund, through the Trustees, then brought the present action to recover the full withdrawal liability, including interest, attorney's fees and costs.

## Discussion

The Trustees argue that there is no dispute that withdrawal liability has been assessed and no dispute that Prest Metals has failed to make the payments that have come due, and, consequently, they contend that summary judgment in their favor is warranted. Moreover, the Trustees allege that because Prest Metals failed to demand arbitration within the time limit prescribed by the MPPAA, it has lost its right to litigate the issue of whether it ever completely withdrew from the Plan.

Prest Metals responds with three arguments. First, it contends that it never withdrew from the plan, as the term "withdrawal" is defined by the MPPAA, and,

---

**3.** Although this letter would seem to indicate that the determination that Prest Metals had withdrawn was made based on its move to New Jersey, plaintiffs currently maintain that the determination was a result of Prest Metals' failure to meet its funding obligations. *See* Pl. 56.1 Stmt, ¶ 7. In any event, the reason for the determination is not relevant to the present motion.

therefore, no withdrawal liability could have been validly assessed. Second, it maintains that the Trustees were under a duty to initiate arbitration after Prest Metals' attorney "directed them to do so if they were not going to respond to the defendants [sic] request for [review]." Def. Mem., p. 10.[4] Third, it argues that the November 10, 1998 letter from Briscoe to Prest Metals was not a "response" to Prest Metals' request for review under the MPPAA, and so the clock on their time to request arbitration never began to run. Each of these arguments is addressed below.

### (1)

### Withdrawal

Prest Metals first asserts that it cannot be responsible for paying withdrawal liability because it never withdrew from the plan. The Trustees respond that the dispute as to whether Prest Metals withdrew should have been submitted to arbitration, and, because the date for arbitration has long since passed, Prest Metals is precluded from now making this argument. In order to address both parties' positions, a brief analysis of the withdrawal liability provisions of the MPPAA is necessary.

Both parties agree that the MPPAA governs the pension plan in the present case. Under that act, where an employer completely or partially withdraws from a plan, the plan sponsor can assess withdrawal liability against that employer in order to protect any future benefits that may have vested for employees covered by the plan. 29 U.S.C. § 1381(a). A complete withdrawal occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). A partial withdrawal occurs where, for a given plan year, "there is a 70–percent contribution decline" or "there is a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385.

In the event of a complete or partial withdrawal by an employer, the plan sponsor must calculate the amount of withdrawal liability and notify the employer of that amount. 29 U.S.C. § 1382. This notification must occur "as soon as practicable" after an employer's complete or partial withdrawal. 29 U.S.C. § 1399(b). Within ninety days of such notification, the employer may: (1) request that the plan sponsor "review any specific matter relating to the determination of the employer's liability and the schedule of payments"; (2) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits"; or (3) "furnish any additional relevant information to the plan sponsor." 29 U.S.C. § 1399(b)(2)(A). After a "reasonable review of any matter raised," the plan sponsor "shall notify" the employer of the "plan sponsor's decision," "the basis for the decision," and "the reason for any change in the determination of the employer's liability or schedule of liability payments." 29 U.S.C. § 1399(b)(2)(B).

Any disputes arising between the employer and the plan sponsor "concerning a determination made under sections 1381 through 1399 ... shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Moreover, ERISA is a "pay-first-question-later" statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability. *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 882 (2d

---

4. The brief actually says if they were not going to respond to the defendants' "request for arbitration," but this appears to be an error as the remainder of the brief addresses the Fund's failure to respond to the request for *review. See, e.g.,* Def. Mem, p. 14–15.

Cir.1988). Either party can request arbitration, but the request must be submitted within sixty days. 29 U.S.C. § 1401(a)(1).[5] If no arbitration is initiated within this time frame, the amount of withdrawal liability "shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). Once the amount becomes due and owing, the plan sponsor may bring an action in state or federal court for collection of the withdrawal liability. *Id.*

■ As fully discussed in part (3) below, no request for arbitration was made within the time limits described above. Prest Metals argues, however, that these provisions are inapplicable because it never withdrew from the plan. Thus, Prest Metals is challenging the plan sponsor's original determination that it "completely withdrew." The issue then becomes, is this a dispute that Prest Metals was required to submit to arbitration in the first instance? If it is, then there can be no dispute that Prest Metals failed to do so, and the amount it owes in withdrawal liability can no longer be contested. If, on the other hand, a dispute regarding the initial determination of withdrawal does not have to be arbitrated, then Prest Metals can challenge that determination here.

■ The Second Circuit has not addressed the precise issue of whether the determination that an employer has withdrawn must be arbitrated, but its decisions on related issues dictate the outcome in the present case. As noted above, ERISA requires that all disputes arising out of a determination made under the withdrawal liability sections must be arbitrated. *See* 29 U.S.C. § 1401. This provision does not completely bar federal jurisdiction, howev-

er, because under certain circumstances the parties are not required to submit their dispute to the arbitrator first. *See T.I.M.E.-DC, Inc. v. Management–Labor Welfare & Pension Funds*, 756 F.2d 939, 945 (2d Cir.1985). Specifically, if the dispute is not solely over factual issues, but instead involves a constitutional question or, in some cases, a matter of statutory interpretation, it need not necessarily be resolved by an arbitrator. *See id.* In *T.I.M.E.–DC*, for example, the Second Circuit held that, where the dispute revolved solely around the interaction of two ERISA sections, only one of which was included in the sections covered by the arbitration provision, that dispute need not be submitted to arbitration. *Id.* at 945.

■ On the other hand, where the parties' disagreement is a factual dispute related to the imposition of withdrawal liability, that dispute must be arbitrated. In *New York State Teamsters Conf. Pension & Retirement Fund v. McNicholas Transportation Co.*, 848 F.2d 20 (2d Cir.1988), a fund had assessed withdrawal liability against McNicholas, an employer participating in the fund, alleging that McNicholas had withdrawn when it ceased contributing on behalf of its New York employees. Relying on an exception to withdrawal liability assessment in the context of labor disputes, the employer challenged the determination that it had withdrawn, arguing that it had merely ceased contributions to the plan due to a labor dispute at its Pittsburgh site. *Id.* at 22–23. The district court rejected this argument, holding that the dispute as to whether the employer had ceased contributions solely due to the labor problems in Pittsburgh was a dispute

---

5. The clock begins to run on this sixty-day limit at the earlier of: (1) the date the employer was notified of the plan sponsor's decision regarding the employer's request for review; or (2) 120 days after the date of the employer's request for review. 29 U.S.C. § 1401(a)(1).

that should have been arbitrated. *Id.* at 21–22. Because the employer had failed to request arbitration within the time limits prescribed by the MPPAA, it was foreclosed from litigating this factual dispute in federal court. *Id.*

The Second Circuit affirmed, holding that, barring extraordinary circumstances, wherever there is a factual dispute related to the assessment of withdrawal liability, that dispute must be submitted to arbitration. *Id.* at 23. Because the employer's reasons for ceasing contributions were in dispute, this was a question of fact for the arbitrator to determine, and the employer had waived its right to arbitration by failing to request it within the prescribed time limit. *Id.* Moreover, the court refused to send the parties to arbitration at that point because the employer had not timely requested arbitration in the first instance. *Id.* at 23–24.

That same year, the Second Circuit also decided *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879 (2d Cir.1988). In *Levy Bros.*, the employer argued that it could not be assessed withdrawal liability, and need not submit to arbitration, because it was not an employer subject to the MPPAA. *Id.* at 884. The Second Circuit recognized that it was not clear whether any of the defendant's employees were covered by the fund during the relevant time period, and, accordingly, it was possible that the employer was not subject to the MPPAA. *Id.* at 885–86. Nonetheless, the court held that resolving this question was an issue of fact that should have been submitted to arbitration. *Id.* at 886. This was true regardless of whether the dispute also involved issues of statutory interpretation, insofar as the statutes which required interpretation were the withdrawal liability statutes themselves. *Id.* In other words, where the statute requiring interpretation is one of

the statutes subject to the arbitration requirement of § 1401, i.e., 29 U.S.C. §§ 1381–99, that interpretation should be submitted to an arbitrator. *Id.*

Also relevant to the present case, the *Levy Bros.* court held that the employer's failure to seek relief in district court within the time frame established for arbitration militated against waiving the arbitration requirement. *Id.* at 886–87. The court explained:

> If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability before the time period to initiate arbitration expires.... The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound.

*Id.* at 887 (internal citations omitted).

Although these cases are instructive, if not conclusive, one additional decision should be noted. Specifically, one district court in this circuit has directly addressed the issue of whether the determination that an employer has withdrawn must be arbitrated. In *ILGWU Nat'l Retirement Fund v. Empire State Mills Corp.*, 696 F.Supp. 885 (S.D.N.Y.1988), the employer, which had missed the arbitration deadline, raised the same argument that is presented by Prest Metals in the present case; namely, the employer argued that it need not submit to arbitration over the assessment of withdrawal liability because it never withdrew from the plan. *Id.* at 890. The court rejected this position, finding that a dispute over the determination that the employer had withdrawn from the plan was "within the ambit of MPPAA's arbitration provision." *Id.* at 891. Accordingly, the court held that, by failing to submit the dispute to arbitration, the employer

could not now seek resolution of the issue of whether it ever withdrew from the plan in district court. *Id.*

While not binding, the above authority, together with the relevant Second Circuit cases cited, dictate that Prest Metals' argument must be rejected. If Prest Metals wished to contest the determination that it withdrew from the plan, it was required to do so in arbitration. *See id.* The dispute over that determination was, and is, almost entirely a factual dispute as to whether the employer, after its move to New Jersey, was still operating under, and contributing to, the plan. Indeed, throughout its own brief, Prest Metals continually stresses the existence of multiple questions of fact with respect to whether it had withdrawn from the plan.[6] Because this was a factual dispute, Prest Metals was required to submit the dispute to an arbitrator. *McNicholas,* 848 F.2d at 23.

■ To whatever extent the dispute involved some statutory interpretation as to the meaning of "withdrawal," that, too, was the subject of arbitration. The term "withdrawal" is defined under two sections, *see* 29 U.S.C. §§ 1382, 1385, both of which fall within the ambit of the sections which must be arbitrated under § 1401. *See* 20 U.S.C. § 1401(a)(1). Accordingly, the interpretation of those terms, if any was necessary, was appropriately within the province of the arbitrator. *See Levy Bros.,* 846 F.2d at 886.

Finally, to whatever extent Prest Metals may have a valid argument that it was not subject to the arbitration requirement, which is far from clear, it failed to raise this point in a timely fashion by not seeking any sort of relief in this court before the time limit for arbitration had expired.

This failure weighs heavily against Prest Metals, especially in light of the fact that it missed the deadline by over one year. *See id.* at 887.

For the foregoing reasons, Prest Metals' argument that it was not required to arbitrate this dispute because it never withdrew from the Fund must be rejected.

### (2)

### Initiating arbitration

The second argument advanced by Prest Metals is that the Fund was under an obligation to initiate arbitration when Mr. Hoffinger indicated that Prest Metals wished to arbitrate. As a threshold matter, there is no evidence that Prest Metals ever made a clear, unambiguous request for arbitration. In fact, in the letter sent by Prest Metals on November 10, 1998, Mr. Hoffinger merely asked "[a]re you filing the 'demand for arbitration' with the American Arbitration Association?" Moss Aff., Ex. G. Although, in a previous letter, Prest Metals had indicated that it was interested in arbitration, this request was made in connection with a request for a review of the withdrawal liability and was followed by several other letters which contained no mention of arbitration. *See* Moss Aff., Exs. B, C, F. Therefore, it is not clear whether Prest Metals ever made a conclusive request for arbitration to the Fund.

■ In any case, even assuming such a demand had been made, Prest Metals points to no authority for the proposition that the Fund was required to request arbitration, and independent research reveals no such obligation. The MPPAA clearly allows either party to make the request for arbitration, and nothing in the statute indicates that once one party ex-

---

**6.** In arguing that there exist genuine issues of material fact, Prest Metals was hoping to preclude the grant of summary judgment. In so

doing, however, Prest Metals has authored a self-defeating argument.

presses an interest in arbitration, the other is under a duty to commence such a proceeding. *See* 29 U.S.C. § 1401(a)(1). Furthermore, the Fund expressly informed Prest Metals of the time limits within which arbitration must be requested in the letter sent on September 29, 1998. Cooper Aff., Ex. A. In its subsequent letter of November 10, 1998, the Fund informed Prest Metals that if *Prest Metals* desired arbitration, a "proceeding may be commenced by filing a demand for arbitration with the American Arbitration Association of New York." Briscoe Decl., Ex. F. As explained in the following section, this letter was sent three months prior to the expiration of the time within which Prest Metals was required to request arbitration. These letters should have made it clear that the Fund was not going to request arbitration, and if Prest Metals wished to do so, it must do so promptly. Accordingly, Prest Metals' assertion that the Plan should have requested arbitration is without merit.

### (3)

### Request for review

■ The final argument advanced by Prest Metals is that the time limit within which it was required to file for arbitration has not yet run. This argument is premised on the contention that the Fund's November 10, 1998 response letter did not indicate that a full review had been conducted, and, consequently, it did not suffice as a proper "response" to Prest Metals' request for review. *See* Briscoe Decl., Ex. F (the Fund's November 10, 1998 letter). Because it never received a proper response, and because Prest Metals contends that the sixty day time limit begins to run upon receipt of a response, *see* 29 U.S.C. § 1401(a)(1)(A), Prest Metals concludes that the time within which it was

required to request arbitration never began to run.

This contention is primarily based on dicta in *A. Soloff & Son, Inc. v. Asher*, 594 F.Supp. 724 (S.D.N.Y.1984). In discussing a constitutional challenge to the withdrawal liability provisions, the court stated that the period within which an employer must request arbitration starts to run "[o]nly after the Fund responds to the employer's request for a review." *Id.* at 726. From this isolated statement, Prest Metals concludes that the Fund's response was a condition precedent to the beginning of its time to commence arbitration.

The quotation cited by Prest Metals, however, is taken completely out of context, and, moreover, *Asher* is inapposite. In *Asher*, the employer was challenging the sixty-day time limit within which an employer must file for arbitration, arguing that this time limit was so short as to deny the employer due process. *Id.* at 725–26. The fund in *Asher*, however, had responded to the employer's request for review. *Id.* Therefore, in that case, the relevant time period *was* based on the date when the Fund responded. *See* 29 U.S.C. § 1401(a)(1)(A). Contrary to Prest Metals assertion, the court did not state or even imply that this is the *only* relevant date in determining when the sixty-day time limit begins to run.

In any event, such an assertion is contrary to the relevant statute. The statute governing the time limit for commencing arbitration does not limit the starting date to the date that was applicable in *Asher*. To the contrary, it lists two possible starting dates. Specifically, it provides that the sixty-day limit begins after the *earlier* of:

> (A) the date of notification to the employer [of the Fund's response to the employer's request for review] under 1399(b)(2)(B) of this title, or

(B) 120 days after the date of the employer's request [for review] under section 1399(b)(2)(A) of this title.

29 U.S.C. § 1401(a)(1). Because the fund in *Asher* had responded to the request for review, subsection (A) was the appropriate date from which the time began to run.

In the present case, even accepting Prest Metals' contention that the Fund's letter of November 10, 1998 was not a proper response to its request for review, subsection (B) would then apply. In that event, the time within which Prest Metals was required to request arbitration would have been 180 days from the date of its request for review. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Louisville Auto Rail Servs., Inc.*, 67 F.Supp.2d 933 (N.D.Ill. 1999) (where fund fails to respond to request for review, employer has 180 days from request to commence arbitration). The request for review was sent to the Fund on October 13, 1998, and, consequently, Prest Metals' deadline for seeking arbitration was March 11, 1999. Because Prest Metals did not submit a request for arbitration until March 16, 2000, more than a year too late, there can be no dispute that it was not timely.

In sum, none of the three arguments advanced by Prest Metals justifies its failure to request arbitration. Its contention that it had not withdrawn was a dispute that should have been arbitrated. Moreover, there was no obligation imposed upon the Fund to request arbitration, regardless of any statement to that effect that may have been made by Prest Metals. Finally, even assuming that the Fund never responded to Prest Metals' request for review, the sixty-day time limit would have expired by March 11, 1999, more than a year before any request was made. Consequently, the Fund, through the Trustees, is entitled to the full amount of withdrawal liability.

### (4)

### Amount of liability

The only remaining matter is the determination of the amount of withdrawal liability. The Fund calculated the total amount of withdrawal liability owed by Prest Metals to be $202,271.00. Cooper Aff., Ex. A. Prest Metals was to pay this amount by making quarterly payments of $4,249.00 for 80 quarters, beginning January 1, 1999. *Id.* For the reasons stated above, because Prest Metals has failed to request arbitration, the amount of liability is now fixed.

Because Prest Metals had not made any of its withdrawal liability payments through February 28, 2000, the Fund sent a letter indicating that Prest Metals was in default, and the total amount of withdrawal liability would be due if the default was not cured in sixty days. Cooper Aff., Ex. C. The default was not cured, and the Fund accelerated the total amount due pursuant to 29 U.S.C. § 1399(c)(5).

The MPPAA provides for additional liability beyond the principal amount due. The amount an employer owes in delinquent withdrawal liability under the MPPAA is calculated in the same manner as other delinquent contributions under ERISA. 29 U.S.C. § 1451(b). Accordingly, the Fund is entitled to:

(A) the unpaid contributions

(B) interest on the unpaid contributions

(C) an amount equal to the greater of—

  (i) interest on the unpaid contributions, or

  (ii) liquidated damages provided for under the plan . . .

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1131(g)(2). Because the Fund in the present case did not provide a liquidated damages provision, Prest Metals is liable for the additional interest under § 1131(g)(2)(C)(i).

Interest is charged at the rate prescribed by the Pension Benefit Guarantee Corporation ("PBGC"). *See* 29 U.S.C. § 1399(c)(6). The PBGC sets the interest rate for each quarter based on the "average quoted prime rate on short-term commercial loans for the fifteenth day ... of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15." 29 C.F.R. § 4219.32(b). Pursuant to Statistical Release H.15, in the present case the following interest rates are applicable for each quarter:

| | |
|---|---|
| January 1, 1999 | 7.75% |
| April 1, 1999 | 7.75% |
| July 1, 1999 | 7.75% |
| October 1, 1999 | 8.25% |
| January 1, 2000 | 8.50% |
| April 1, 2000 | 8.75% |
| July 1, 2000 | 9.50% |
| October 1, 2000 | 9.50% |
| January 1, 2001 | 9.50% |
| April 1, 2001 | 8.50% |

*See* Board of Governors, Selected Interest Rates, *available at* http://www.federalreserve.gov/releases/H15/data/ww/prime.txt. Applying these rates, the total interest owed through the June 1, 2001 payment is $46,124.01. Thus, Prest Metals' total liability is $294,519.02 ($202,271.00 in principal, plus $46,124.01 in interest, plus $46,124.01 in penalty interest), plus attorney's fees and costs.

### Conclusion

For the foregoing reasons, Prest Metals failed to request arbitration in a timely fashion, and has, accordingly, waived its right to challenge the assessment of withdrawal liability. Consequently, the Trustee's motion for summary judgment is granted, and the Trustees are awarded $294,519.02 plus attorneys fees and costs. The Clerk of the Court is directed to close the case.

So Ordered.