CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Central States, Southeast and Southwest Areas Health and Welfare Fund and Howard McDougall, trustee, Plaintiffs,

v.

LOUISVILLE AUTO RAIL SERVICES, INC., a Delaware corporation, and Kentucky Auto Ramp Services, Inc., a Delaware corporation, Defendants.

No. 98 C 4140.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1999.

Albert M. Madden, Jon K. Stromsta, Robert Anthony Coco, James Patrick Condon, Central States Law Department, DesPlaines, IL, for Howard McDougall, plaintiffs.

Timothy Alan Wolfe, Bates, Meckler, Bulger & Tilson, Chicago, IL, Stephen M. Silvestri, Stefan J. Marculewicz, Miles & Stockbridge, Baltimore, MD, for Louisville Auto Rail Services, Inc., defendants.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"); Central States, Southeast and Southwest Areas Health and Welfare Fund ("H & W Fund") (together, "the Funds"); and trustee Howard McDougall have filed a two-count complaint against defendants Louisville Auto Rail Services, Inc. ("LARS") and Kentucky Auto Ramp Services, Inc. ("KARS"). Defendants were required to contribute to the Funds on behalf of their employees under collective bargaining agreements they had executed with Local Union No. 89. Plaintiffs allege that defendants have violated various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001–1461. Plaintiffs allege that defendants are subject to withdrawal liability and are also liable for delinquent contributions to the fund. Plaintiffs have filed a motion for summary judgment pursuant to Fed. R.Civ.P. 56, and defendants have filed a cross motion for summary judgment.

### DISCUSSION

#### I. Withdrawal Liability

In Count I, plaintiffs argue that because defendants failed to initiate arbitration in a timely manner under 29 U.S.C. § 1401(a)(1), defendants must pay plaintiffs the amount of withdrawal liability demanded. The crucial facts are undisputed. On January 19, 1997, defendants ceased to have an obligation to contribute to the Funds, and thus effected a "complete withdrawal" as defined in 29 U.S.C. § 1383. Plaintiffs subsequently sent defendants a notice of withdrawal liability and demand for payment. On August 11, 1999, defendants sent plaintiffs a request for review of the withdrawal liability assessment. Plaintiffs did not respond to defendants' request for review. Defendants never initiated arbitration and never made any payment to plaintiffs.

According to plaintiffs, defendants were bound by statute to initiate arbitration within 180 days of requesting review. Plaintiffs rely on 29 U.S.C. § 1401(a)(1), which states: "Either party may initiate the arbitration proceeding within a 60–day

period after the earlier of . . . (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title." Plaintiffs argue that because they never responded to defendants' request for review, § 1401(a)(1)(B) applies. Under this section, the 60 days in which defendants could have requested arbitration began running 120 days after their request for review.

■ Defendants respond that they were not entitled, let alone required, to initiate arbitration until plaintiffs responded to their request for review. Defendants claim that plaintiffs were required to conduct a review, and that they were unable to initiate arbitration in the absence of such a review. Yet defendants' argument ignores the plain language of § 1401(a)(1)(B). The relevant date under this subsection is the date of the employer's request, not the date of a review by the pension fund.

Defendants' argument is likewise foreclosed by precedent. The pension fund in *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899 (7th Cir.1988), did not respond to the employer's request for review until after 120 days had passed. *See id.* at 901. The Seventh Circuit nevertheless held that the 60 days began to run 120 days after the date the employer requested review. *See id.* Although the pension fund in that case eventually responded to the request for review, its failure to respond promptly did not absolve the employer of the responsibility to timely request arbitration. The court held that the defendant was barred from seeking arbitration because it had not initiated arbitration within 180 days of requesting review. *See id.* Moreover, Judge Marovich recently held, in a case quite similar to the instant case, that when an employer requested review and the pension fund did not respond to this request, the employer "had 60 days to initiate arbitration after the 120 days had passed from the date of the request for review." *Central States, Southeast and Southwest Areas Pension Fund v. Six Transfer Cartage Co.*, 1999 WL 350697, at *3 (N.D.Ill. May 19, 1999).

■ Defendants argue in the alternative that because their failure to timely request arbitration is plaintiffs' fault, the statute should be equitably tolled, or plaintiffs should be equitably estopped from arguing that defendants are time-barred. Defendants cite *Central States, Southeast and Southwest Areas Pension Fund v. Premarc*, 1994 WL 457170 (N.D.Ill. Aug.22, 1994), for this proposition. In *Premarc*, Judge Kocoras applied the doctrine of equitable estoppel to find that an employer's arbitration request was timely. As plaintiffs points out, however, *Premarc* is inapposite.

The pension fund in *Premarc* sent the employer a review response that the employer never received. *See id.* at *4. The employer assumed that the pension fund had not responded to its review request, and it therefore adhered to the time limits prescribed by § 1401(a)(1)(B), initiating arbitration within 180 days of sending its request. *See id.* at *5. Because the pension fund had responded to the employer's request for review, however, the employer's arbitration demand was technically not timely. The employer should have demanded arbitration within 60 days of the pension fund's response, since that was the earlier of the two dates. *See id.* at *4 ("[U]nder § 1401(a)(1)(A) the statute of limitations was triggered when the Pension Fund sent its review response."). The evidence showed, however, that the employer had never received the pension fund's response, and had made a good faith effort to determine whether the fund had issued such a response, but that the pension fund had never answered the employer's query. *See id.* Judge Kocoras concluded that the fund's silence "constituted active concealment for the purpose of preventing [the defendant] from initiating arbitration proceedings in time," *id.*, and held that the pension fund was estopped

from arguing that the employer's arbitration demand was not timely.

The crucial event in *Premarc* was not the date that the employer sent the request, but the date of the pension fund's response. As Judge Kocoras noted, "the running of the statute of limitations was in the Pension Fund's unilateral control." *Id.* at *4. In the instant case, however, the statute of limitations was triggered when defendants sent their request, and thus was not in plaintiffs' control. Plaintiffs' failure to respond to this request is therefore irrelevant and did not prevent defendants from timely initiating arbitration. *See, e.g., Six Transfer,* 1999 WL 350697, at *3 (refusing to toll the limitations period in a similar case).

■ Given that defendants requested review on August 11, 1997, and that plaintiffs did not respond to this request, the 60–day window within which defendants might have demanded arbitration began running 120 days later, on December 9, 1997. Defendants did not initiate arbitration before February 7, 1998, the date the 60–day window closed. "Failure to initiate arbitration has a simple result—the amount demanded by the pension plan sponsor becomes due and owing." *See Robbins v. Admiral Merchants Motor Freight, Inc.,* 846 F.2d 1054, 1056 (7th Cir.1988) (citing 29 U.S.C. § 1401(b)(1)).

Defendants argue that they are not subject to withdrawal liability because they fall under the "free look" exemption discussed in 29 U.S.C. § 1390. Yet ERISA clearly states that "any dispute between an employer and the plan sponsor ... concerning a determination made under [§§ 1381–1399] shall be resolved through arbitration." 29 U.S.C. § 1401(a); *see also Robbins,* 846 F.2d at 1057. Because § 1390 "is right smack in the middle of those sections," *Six Transfer,* 1999 WL 350697, at *3, the court does not examine the merits of defendants' claim. Unlike *Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 875 F.2d 1285 (7th Cir.1989), this is "a case in which the party assessed did absolutely nothing, waited until the pension [fund] filed a collection [action] against it, and then for the first time tried to assert its defenses in court when it should have proceeded in arbitration." *Id.* at 1293 (citations omitted). Defendants should have timely requested arbitration to assert their defenses.

Moreover, although defendants were required to adhere to plaintiffs' payment schedule during the review period, defendants have yet to make a single withdrawal liability payment. As the Seventh Circuit has stated: "ERISA makes it clear that an employer withdrawing from a multiemployer pension fund must pay withdrawal liability to the Fund, and our cases make it equally clear that interim payments must be made pending arbitration." *Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.,* 155 F.3d 868, 876 (7th Cir.1998); *see also Robbins,* 846 F.2d at 1057 ("In order to insure the stability of pension funds, Congress enacted a 'pay now, dispute later' scheme.").

■ Because defendants were delinquent in making payments, plaintiffs request interest on the withdrawal liability assessment, liquidated damages, costs, and attorneys' fees under 29 U.S.C. § 1132(g)(2). Defendants do not contest this request, and the court finds that it is supported by the statute and by precedent. "Liquidated damages under the [MPPAA] are something that an employer who has withdrawn from an ERISA plan ... must pay as a penalty for refusing to follow the statutory procedure for challenging assessments of withdrawal liability." *Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.,* 960 F.2d 1339, 1347 (7th Cir.1992). In addition, ERISA requires courts to award reasonable fees and costs to a pension fund that must obtain a judgment in order to collect delinquent contributions to a multiemployer fund. *See* 1132(g)(2); *see also Wintz Properties,* 155 F.3d at 876; *Chicago Truck Drivers, Helpers and*

*Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.,* 125 F.3d 526, 535 (7th Cir.1997).

The court grants plaintiffs' motion for summary judgment on Count I. Plaintiffs' requests for interest and for liquidated damages are granted as well. The parties are directed to comply with Local Rule 54.3 with respect to plaintiffs' attorney's fees and non-taxable costs.

## II. Delinquent Contributions

The Pension Fund and the H & W Fund contend that defendants were delinquent in making contributions to the funds in violation of the collective bargaining agreement, the Pension Fund Participation Agreement, the Health and Welfare Fund Participation Agreement, and § 515 of ERISA, 29 U.S.C. § 1145 (requiring employers to make contributions in accordance with the terms and conditions of the agreements that create the obligation to contribute).

Defendant LARS does not contest plaintiffs' claims for contributions through January 19, 1997, for Kevin A. Lauersdorf ("Lauersdorf"), Danny . D. Taylor ("Taylor"), and Leslie J. Hartz ("Hartz"),[1] but quarrels with plaintiffs' contention that LARS should have made contributions for these employees through February 22, 1997. LARS argues that it cannot be expected to make contributions for dates after January 19, 1997, the date LARS lost the contract. Under the terms of the collective bargaining agreement, however, if an employee is absent due to illness or an off-the-job injury, the employer is required to contribute to the funds for four weeks. Neither party presents evidence of whether Lauersdorf, Taylor, and Hartz were absent because of illness or off-the-job injury so as to require LARS to contribute for an extra month.[2] The court finds as a

matter of law that if any of these employees qualifies for an extra month of contributions, LARS was required to contribute to the funds through February 22, 1999.

Plaintiffs also claim that LARS owes contributions to the fund based on the employee history added after LARS and Local Union No. 89 resolved Grievance 466, and that KARS owes contributions based on the employee history added pursuant to the resolution of Grievance 458. Defendants argue that plaintiffs cannot recover on these claims because the grievance determinations have been paid in full. Plaintiffs admit that defendants have paid the principal owed under the grievance determinations, but argue that defendants owe interest.

Defendants correctly note that plaintiffs raise a claim based on the grievances for the first time in their summary judgment motion, and that there has been no discovery on the issue. Defendant has raised an issue of fact about whether they owe plaintiffs additional amounts for the grievance determinations. The court directs the parties to confer as to what additional discovery, if any, is needed on this issue so that the court can quantify an award. The parties are directed to appear on November 10, 1999, at 9:00 a.m., to present their conclusions to the court.

---

1. Although plaintiffs initially argued the same point with respect to employee Sue Mitchell, LARS presents evidence that it made all required contributions for Mitchell and plaintiffs concede this point.

2. The court does not understand whether the parties are skirting this issue or have simply neglected to mention it. Both parties are to be faulted for placing insufficient argument about the delinquent contributions issue in their briefs, and too much argument about this issue in their statements of fact.