**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 97-30594**

---

**LOUISIANA BRICKLAYERS & TROWEL TRADES
PENSION FUND & WELFARE FUND,**

**Plaintiff-Appellee,**

**v.**

**ALFRED MILLER GENERAL MASONRY
CONTRACTING COMPANY,**

**Defendant-Appellant.**

---

**Appeal from the decision of the United States District Court
for the Western District of Louisiana**

---

October 16, 1998

Before GARWOOD, JONES, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Although Congress has conferred primary jurisdiction on the National Labor Relations Board ("NLRB") for most disputes arising in the labor context, the Employee Retirement Income Security Act of 1974 ("ERISA") established a remedy, enforceable in the district courts, whereby multiemployer plans may recover delinquent contributions from employers obligated to make the payments under the terms of a collective bargaining agreement ("CBA"). Faced with such an ERISA claim, the employer here sought, first, a refuge under the NLRB's jurisdiction; second, a decision on successorship in labor law that, it contends, relieves it of

liability to the plan; and third, a finding that it terminated the CBA. We hold that the first alternative is not supportable on these facts; the second raises a defense not cognizable in the ERISA case; and the third argument is meritless.

## I. INTRODUCTION

For nearly forty years, Alfred Miller General Masonry Contracting Company ("Miller") and Bricklayers Local 4 ("Local 4") have maintained an employer/union relationship. In July 1990, the parties entered into a new CBA. Pursuant to the CBA, Miller regularly contributed certain amounts to the Louisiana Bricklayers & Trowel Trades Pension Fund and Welfare Fund ("the Funds"). Article XXIII[1] of the CBA ("Article XXIII") provided for automatic renewal from year to year unless either party furnished written notice of intent to terminate the agreement not later than sixty days nor more than ninety days prior to the July 1 anniversary date.[2]

In July 1994, Local 4 was among 28 locals in three states that were merged into a consolidated "local," Bricklayers Local

---

[1] Article XXIII was improperly labeled Article XIII in the CBA. For convenience, this court will refer to the provision, as have the parties, by the proper designation, "Article XXIII."

[2] Article XXIII reads, in pertinent part:

This agreement shall be effective commencing July 1, 1994, shall continue in full force to and including June 30, 1995, and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new [a]greement, in whole or in part[,] is given in writing by either party to the other not later than (60) days nor more than (90) days prior to the expiration date or anniversary date thereafter.

Union Number 1 ("Local 1"), by the International Executive Board of the International Union of Bricklayers and Allied Craftsmen. The newly-designated president/secretary-treasurer of Local 1 informed Miller of the merger by memorandum dated July 18, 1994.

On August 30, 1994, Miller wrote to the president of Local 1 contesting the local's representation rights. Miller refused to recognize Local 1 as a successor union to Local 4. However, Miller did state,

> [F]or the immediate future we will continue to make monthly contributions to our local benefit funds on behalf of those employees covered by the Local 4 collective bargaining agreement. If there is a change in our position, we will notify you in another letter.

In September 1994, without further notification, Miller stopped contributing to the Funds.

## II. THE DISPUTE

When Miller ceased making fund contributions, the Funds brought suit in the Western District of Louisiana in order to

compel payment. Citing sections 502[3] and 515[4] of ERISA and section 301[5] of the Labor Management Relations Act ("LMRA"), the Funds sought to recover the delinquent contributions and available interest, penalties, costs, and attorneys' fees. The parties filed cross-motions for summary judgment regarding the claims, and the magistrate judge granted summary judgment in favor of the Funds.

In his memorandum ruling, the magistrate judge addressed three issues. First, the court determined that a district court could properly exercise jurisdiction over the claims -- rejecting Miller's argument that the NLRB is the exclusive forum for resolution of the disputed labor law issues. Second, the court ruled that Local 1 is a successor to Local 4. Third, the court found that Miller's August 30 letter failed to terminate the CBA.

---

[3]     29 U.S.C. § 1132.  Section 502(a)(3) provides,

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).  As fiduciaries, the trustees of a multiemployer benefit plan may maintain a cause of action under section 502(a)(3) of ERISA.  See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547, 108 S. Ct. 830, 835 (1988); see also 29 U.S.C. § 1002(21)(A).

[4]     29 U.S.C. § 1145.  ERISA section 515 states,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

[5]     29 U.S.C. § 185.  Neither party argues the § 301 claim on appeal.

4

When Miller moved for reconsideration, the magistrate judge revised his earlier ruling, retreating from the finding that Local 1 was a successor union to Local 4. In so doing, the court noted, "[W]hether Local 1 was a successor to Local 4 . . . is immaterial to the proper disposition of this matter." Instead, the court focused on the limited defenses to an action under ERISA section 515 and concluded that the dissolution of Local 4 was not a defense to the underlying action. Based on these rulings, the court entered judgment for the Funds for delinquent payments covering the period of September 1994 to November 1996. Miller has appealed.

## III.  DISCUSSION

*A.  Standard of Review*

When a district court grants summary judgment, this court reviews the determination <u>de</u> <u>novo</u>, employing the same standards as the district court. See <u>Urbano v. Continental Airlines, Inc.</u>, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53 (1986); <u>see</u> <u>also</u> Fed. R. Civ. P. 56(c).

B.    *Jurisdiction, Defenses, and ERISA section 515*

Generally, the NLRB retains primary jurisdiction to address disputes arguably subject to sections 7 or 8 of the National Labor Relations Act ("NLRA").  See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83, 102 S. Ct. 851, 859 (1982).  As was previously noted, however, ERISA was amended to facilitate the collection of past-due pension and welfare fund contributions from employers in federal courts.

Notwithstanding the Funds' proper invocation of federal court jurisdiction, Miller asserts that the labor law defenses it raises should have been heard first under the auspices of the NLRA and that the federal court should have dismissed pending an NLRB action.  In so contending, Miller principally relies on Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., 484 U.S. 539, 108 S. Ct. 830 (1988).  Advanced Lightweight is, however, distinct, as it involved negotiations following the lapse of a collective bargaining agreement.  See 484 U.S. at 542, 108 S. Ct. at 832.  A discussion of the Advanced Lightweight facts and holding is enlightening.

Advanced Lightweight was required to contribute to several employee benefit plans under the terms of a collective bargaining agreement.  See id., 108 S. Ct. at 832.  Following the lapse of the agreement, the employer discontinued contributions to the plans.  See id., 108 S. Ct. at 832.  When the employer ceased

6

contributing, the plans filed suit in federal court. Grounding jurisdiction on ERISA sections 502 and 515,[6] the plans argued that the fund payments were due and owing because the employer's unilateral decision to forestall payment constituted an unfair labor practice under NLRA section 8(a)(5)[7]. Advanced Lightweight, 484 U.S. at 542-43, 108 S. Ct. at 832. Advanced Lightweight maintained that section 515 of ERISA did not govern the "delinquent" contributions because the duty to make these payments would only arise under the good-faith bargaining provisions of the NLRA, not the expired collective bargaining agreement. See id. at 543-44, 108 S. Ct. at 833. As a result, the employer contended that the NLRB retained exclusive jurisdiction over the post-contractual contributions dispute. See id. at 544, 108 S. Ct. at 833.

The Supreme Court ruled that the remedy provided by section 515 of ERISA did not extend to post-contract delinquencies. See id. at 547-49, 108 S. Ct. at 835-36. The Court held,

> [B]oth the text and the legislative history of §§ 515 and 502(g)(2) provide firm support for the . . . conclusion that [the remedy provided by these sections] is limited to the collection of "promised contributions" and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA.

---

[6] Although the plans had alleged jurisdiction under LMRA section 301 in the original complaint, this basis of jurisdiction was abandoned on appeal. Advanced Lightweight, 484 U.S. at 543 n.4, 108 S. Ct. at 832 n.4.

[7] 29 U.S.C. § 158(a)(5).

7

<u>Id.</u> at 548-49, 108 S. Ct. at 835-36 (footnotes omitted).

In <u>Advanced Lightweight</u>, the termination date of the CBA, and thus the last date on which contractually-based fund payments were due under section 515, was a given fact. The NLRB's jurisdiction, according to the Court, had to be invoked to determine non-section 515 liability for the company's alleged post-contractual unfair labor practice.

This case is different. First, the funds are not relying on an unfair labor practice, i.e., a claim under NLRA section 8(a)(5), as the basis for their claim. Second, Miller argues that "the Funds seek contributions during a time at which there was no union party to a collective bargaining agreement with the employer." To reach that conclusion, which would determine that the CBA ended in 1994, we would have to infer the answer to the labor law issue that no valid union successorship occurred. No such issue regarding the termination date of the CBA was presented to or ruled on by the Court in <u>Advanced Lightweight</u>, however, and it is an issue within the unique expertise of the NLRB. In this sense, Miller asks the federal court to usurp the NLRB's function in the labor arena, contrary to <u>Advanced Lightweight</u>, by deciding if and when a facially valid CBA becomes unenforceable. In light of the limited defenses to a claim under section 515, <u>Advanced Lightweight</u> furnishes neither factual or theoretical support for the extension Miller seeks.

Miller's non-jurisdictional arguments assert defenses to the Funds' lawsuit based on lack of proper successorship and a purported termination of the CBA. Under the facts presented here, these defenses are not cognizable in a section 515 action. Section 515 of ERISA was designed to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law -- other than 29 U.S.C. [§] 186." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990) (quoting 126 Cong. Rec. 23039 (1980) (remarks of Rep. Thompson)). The Funds are not identical to the unions; Congress intended to protect the Funds' financial stability by limiting the scope of issues litigable when they seek to recover employers' contributions.

In keeping with this intent, only three defenses to a delinquency action have been recognized by all of the circuit courts that have considered the issues: (1) the pension contributions are illegal,[8] (2) the CBA is void ab initio, e.g., for fraud in the execution,[9] and (3) the employees have voted to decertify the union as their bargaining representative[10]. See Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992)

---

[8]    See Kaiser Steel, 455 U.S. at 86-88, 102 S. Ct. at 861-62.

[9]    See Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773-74 (9th Cir. 1986) (discussing distinctions between fraudulent execution and fraudulent inducement as defenses to claim under section 515).

[10]    See Sheet Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co., 954 F.2d 1506, 1509-10 (9th Cir. 1992).

(discussing potential defenses to section 515 action); cf. Advanced Lightweight, 484 U.S. at 547-49, 108 S. Ct. at 835-36 (finding fund's cause of action under section 515 dissolves following termination of CBA). Thus, the court decisions distinguish between actions which invalidate the underlying CBA and conduct, including unilateral action by the employer,[11] which raises potential defenses to the enforceability of a facially valid CBA. See Bla-Delco, 907 F.2d at 314 ("[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.") (emphasis added).

The defenses asserted by Miller in the case sub judice merely raise potential defenses to the enforceability of the underlying CBA. Miller asserts neither fraud in the execution of the CBA nor illegality in any of its contributions to the Funds. Instead, lack of successorship is raised as an affirmative defense to the facial continuation of the CBA and Miller's contribution obligation. However, Local 1's status as a valid successor to Local 4 involves a complex labor law determination. Thus, West Coast Sheet Metal Co. is factually distinct from Miller's

---

[11] See MacKillop v. Lowe's Market, Inc., 58 F.3d 1441, 1444-45 (9th Cir. 1995) (an employer's unilateral decision to cease contributing to pension funds in light of questions regarding representation status of union failed to constitute defense under section 515); Carpenter's Health and Welfare Trust Fund v. Bla-Delco Constr., Inc., 8 F.3d 1365, 1369 (9th Cir. 1993) (employer's attempt to terminate collectively bargained agreement failed to establish legitimate defense to an action under section 515 as contract merely became voidable).

successorship argument. When employees vote to decertify a union, no material, factual labor law issue arises regarding the enforcement of the previous CBA. See West Coast Sheet Metal Co., 954 F.2d at 1509 ("The trust fund provisions have no legal effect when the Union is no longer the certified representative of West Coast's employees.") On the other hand, when a union claims arguable successor rights, the proper methods for adjudication of this labor law question are either arbitration under the CBA or timely litigation before the NLRB. See Lowe's Market, Inc., 58 F.3d at 1446 (holding employer's contribution obligations under section 515 continue until questions regarding continuing validity of CBA are resolved by arbitration or NLRB); Brower's Moving and Storage, 907 F.2d at 316 ("[A] district court may . . . stay its proceedings pending an NLRB determination with respect to the collective bargaining agreement . . . .").

Also unhelpful to Miller is the question of termination pursuant to the employer's August 30 letter.[12] At best the letter suggests a defense to enforcement of the CBA. But we can go further than this in agreeing with the magistrate judge that, on

---

[12] Although a district court may consider the significance of a purported termination, the court's examination must end following a superficial inquiry into the termination's effect. Thus, a court may determine whether an attempted termination was timely or not. Cf. Bla-Delco Constr., 8 F.3d at 1369. Further, a court may review an alleged termination to determine if the requisite intent has been conveyed. Cf. OPEIU, Local 42 v. UAW, Westside Local 174, 524 F.2d 1316, 1317 (6th Cir. 1975). However, if the issue of termination cannot be resolved through cursory review, the defense to a section 515 action will not succeed. See Bla-Delco Constr., 8 F.3d at 1369 ("The dispute centers on whether Bla-Delco effectively terminated the CBA. Consequently, the CBA was not 'void,' but merely 'voidable' . . . .")

11

the face of the documents, whatever the letter did, it neither unequivocally indicated an intention to terminate the CBA, nor could it do so. See OPEIU, 524 F.2d at 1317 ("[N]otice to terminate must be clear and explicit."). While the August 30 letter rejected any successorship claims of Local 1, Miller equivocated by agreeing to abide by the terms of the CBA "for the immediate future." The letter clearly presupposes future action prior to the complete rejection of the CBA. Moreover, Miller's "termination" letter to Local 4 was also untimely based on the express language of Article XXIII. See Article XXIII, supra note 2 (requiring written notification between April 2 and May 2 in order to avoid renewal of the CBA).

## IV. CONCLUSION

The magistrate judge correctly concluded that the Funds were entitled to recover the contributions Miller failed to make from September 1994 to November 1996, when the CBA terminated by its own terms. Section 515 of ERISA severely limits the defenses available to an employer that has failed to timely contribute to a multiemployer plan. Although Miller established that the CBA was potentially unenforceable, it appears that remedies were available to Miller under the CBA or with the NLRB -- not in the district court. In actions under section 515, a federal court lacks jurisdiction to consider such defenses. See Kaiser Steel, 455 U.S. at 83, 102 S. Ct. at 859; see also Rozay's Transfer, 791 F.2d at

12

773 ("[C]ongress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses . . . ."). Accordingly, this court <u>AFFIRMS</u> the judgment of the district court.

**AFFIRMED.**