INTERNATIONAL PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND, Plaintiff,

v.

H.W. ELLIS PAINTING COMPANY, INC., a/k/a HW Ellis Painting Co., Inc., Defendant.

No. CIV.A. 03–1125(ESH).

United States District Court, District of Columbia.

Oct. 27, 2003.

Sanford G. Rosenthal, Eric B. Meyer, Jennings Sigmond, Philadelphia, PA, for Plaintiff.

Andrew North Cook, Bell, Boyd & Lloyd PLLC, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

Defendant H.W. Ellis Painting Company, Inc. ("Ellis") has filed motions to set aside the entry of default and to vacate the default judgment entered on behalf of the International Painters and Allied Trades Industry Pension Fund ("the Fund"), which had filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1145. Because the Court finds defendant's proposed defenses to be without merit, its failure to answer was deliberate, and a potential for prejudice to plaintiff if defendant's motions are granted, the entry of the default judgment will not be disturbed.

## BACKGROUND

Defendant Ellis entered into a collective bargaining agreement with the International Union of Painters and Allied Trades District Council 11, which requires it to submit monthly contributions to the Fund on behalf of all employees in the bargaining unit.[1] The agreement also provides for audits of the employer's books in connection with these contributions, and the imposition of damages for an employer's failure to contribute to the Fund.

Ellis fell delinquent in its Fund payments and failed to submit required remit-

---

1. The collective bargaining agreement binds Ellis to the Fund's Agreement and Declaration of Trust and the Pension Plan, which together fully delineate employers' obligations to the Fund. (Memorandum of Law in Response to Defendant's Motion to Set Aside Entry of Default and in Opposition to Plaintiff's Motion for Default Judgment ["Pl.'s Resp."] Ex. 1 § 3.)

tance reports. The Fund filed a complaint for legal and equitable relief under ERISA on May 23, 2003, and effected service on Ellis on July 8, 2003. Ellis failed to answer or otherwise respond by July 28, 2003, the deadline imposed by Fed. R.Civ.P. 12.

During July Ellis requested and received documentation from the Fund related to its claims, as well as an itemization of the amounts claimed to be in arrears. (Pl.'s Resp. at 3–4, Ex. 4–5.) Ellis provided the Fund with a written settlement offer on July 25, 2003, enclosing overdue remittance reports and requesting an informal extension of time of at least two weeks to respond to the complaint. (*Id.* Ex. 6.) On July 30, 2003, the Fund counter-offered and agreed to extend the time for Ellis to answer until August 13, 2003. (*Id.* at 5, Ex. 7.) Ellis rejected the Fund's counter-offer on August 7, but paid a portion of the overdue contributions (*i.e.,* $15,612.30) on that date. (*Id.* at 5, Ex. 8.) On August 12, the Fund's attorney confirmed receipt of the partial payment and set a final deadline of August 27, 2003 for Ellis to answer or otherwise respond to the complaint:

> I am willing to extend the time for HW Ellis to file its Answer until August 27, 2003. If by that time, the parties have not reached settlement and/or HW Ellis has not filed its Answer, I, on behalf of the Pension Fund, will promptly file the appropriate pleadings pursuant to Fed. R.Civ.P. 55 .... I strongly suggest that you contact me to discuss resolution of outstanding amounts owed to the Pension Fund. *No further filing extensions will be granted.*

(*Id.* Ex. 9) (emphasis added.)

The parties did not settle, and the August 27 deadline came and went. Meanwhile, on August 12, the Court, being unaware of the negotiations between the parties, issued an Order threatening dismissal if the Fund did not, by September 2, 2003, file a motion for entry of default, or in the alternative, submit an explanation as to why it had not done so. Complying with the Court's Order, the Fund filed a request for default on August 28, which the Clerk of Court entered on September 5. Thereafter, the Fund filed its motion for default judgment on September 2, and since defendant, as far as the Court was aware, had never appeared in the case even though service had been effected over two months earlier, the Court entered judgment on September 10, 2003.[2]

The first submission Ellis made to the Court was its Motion to Set Aside Entry of Default and in Opposition to Plaintiff's Motion for Default Judgment filed on September 11, 2003, along with an answer. Ellis supplemented that filing with a Motion for Relief from Default Judgment on September 24, 2003. To explain its delinquency, Ellis claims that it assumed that it would have additional time to file a responsive pleading due to the "continuing" settlement discussions between counsel. (H.W. Ellis Painting Co., Inc.'s Motion for Relief from Default Judgment ["Mot. for Relief"] at 3.)

## LEGAL ANALYSIS

Default judgments are generally disfavored by courts, because entering and enforcing judgments as a penalty for delays in filing is often contrary to the fair administration of justice. *See Jackson v. Beech,* 636 F.2d 831, 835 (D.C.Cir.1980). The decision whether a default judgment should be set aside is nonetheless commit-

---

**2.** Judgment in the amount of $41,287.50 was entered, including an order to produce remit- tance reports and to make records available for audit.

ted to the sound discretion of the trial court. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C.Cir. 1980); *see also In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir.1996).

■ Fed.R.Civ.P. 55(c) allows for the setting aside of an entry of default for "good cause," and Fed.R.Civ.P. 60(b)(1) provides for relief from a final judgment arising from a defendant's "mistake, inadvertence, surprise, or excusable neglect." While the Rule 60(b) standard is a more rigorous one because "the concepts of finality ... are more deeply implicated" in default judgment cases, courts consider the same criteria when applying either standard. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993); *see also CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992). The factors that must be balanced are whether: (1) the default was willful, (2) the alleged defense was meritorious, and (3) a set-aside would prejudice plaintiff. *Jackson*, 636 F.2d at 835 (quoting *Keegel*, 627 F.2d at 374).

Default judgment was entered on September 10, 2003, and Ellis submitted its Motion to Set Aside the default one day later, apparently before it was aware that the final judgment had been issued. (*See* Mot. for Relief at 1.) There was not a significant delay between the entry of default and the judgment. It may, therefore, be more appropriate to apply the Rule 55(c) standard, instead of the more stringent Rule 60(b) one. The Court need not resolve this issue, however, because under either standard, defendant is not entitled to relief.[3]

## I. Willfulness of defendant's failure to answer

■ A finding of bad faith is not a necessary predicate to the conclusion that a defendant acted "willfully." *Gucci Am., Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir.1998). The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable. *Id.* at 634 (reversing a district court's vacation of default judgment where defendants were aware that a lawsuit was pending against them yet made a deliberate decision not to respond). Reliance upon representations made by opposing counsel may mitigate an intentional failure to respond if the court is convinced that such reliance was made in good faith. *See Keegel*, 627 F.2d at 374.

By relying on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court, however, defendant has failed to protect its own interests in this litigation. *See Simon v. Pay Tel Mgmt., Inc.*, 782 F.Supp. 1219, 1226 (N.D.Ill.1991) (refusing to vacate default judgment). "Having chosen this manner of proceeding, [defendant] also chooses the consequences." *Brand v. NCC Corp.*, 540 F.Supp. 562, 564 (E.D.Pa. 1982) (defendant was not entitled to vacation of a default judgment where it intentionally decided to ignore court action and instead engaged counsel to negotiate settlement but not to litigate); *see also Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir.

3. The Fund argues that because Ellis was a "totally unresponsive party" until after the default was entered and judgment was granted, an analysis of the *Jackson* factors is unnecessary. While there is some merit to this contention, *see Jackson*, 636 F.2d at 836 (indi-

cating that default judgment is "necessary" against an unresponsive party), the Court will nonetheless apply the *Jackson* factors here. *See Mobern Elec. Corp. v. Walsh*, 197 F.R.D. 196, 199 n. 2 (D.D.C.2000).

1991) (where a party willfully abdicates its responsibilities to the court, relief from judgment is not warranted). Here, even though there were settlement negotiations, Ellis did not make "a good faith effort to adhere to the rules of the court and to protect his rights," *Enron,* 10 F.3d at 98, since it had no basis to ignore its obligations to file an answer, especially after plaintiff's counsel made it abundantly clear that no further continuances would be granted after the August 27 deadline.

■ "Parties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders." *Simon,* 782 F.Supp. at 1226; *see also Fed. Sav. & Loan Ins. Corp. v. Kroenke,* 858 F.2d 1067, 1070–71 (5th Cir.1988) (defendant's belief that no adverse actions would be taken against him until settlement negotiations had ceased did not excuse him from filing an answer as directed by the court); *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 951 (N.D.Ind.1975) (ongoing settlement negotiations are not a sufficient reason for a failure to file an answer). Thus, Ellis cannot demonstrate good cause to vacate the default judgment against it simply because the parties were engaged in "continuing discussions." (*See* Mot. for Relief at 3.)

Defendant's attempt to argue that this case is similar to *Keegel* is also unavailing. The plaintiff in *Keegel* wrote to the defendant reaffirming his willingness to settle, granting an informal extension to file an answer, and agreeing not to seek default judgment before a specified date. *Keegel,* 627 F.2d at 373. The plaintiff, however, breached his informal agreement and sought default before the extension expired. *Id.* Because the defendant had relied in good faith on the plaintiff's promise not to seek a default, the Circuit Court concluded that defendant's failure to respond was not willful. *Id.*

Here, the Fund's counsel allowed Ellis an extension of time to answer until August 27. He agreed not to apply for a default until that date, warning that if "by that time, the parties have not reached settlement and/or HW Ellis has not filed its Answer, I, on behalf of the Pension Fund, will promptly file the appropriate pleadings pursuant to Fed.R.Civ.P. 55 .... No further filing extensions will be granted." (*See* Pl.'s Resp. at 12.) Thus, unlike the plaintiff in *Keegel,* the Fund adhered to its agreement not to seek a default until the informal extension had expired. Furthermore, the Fund specifically threatened to file for a default if Ellis failed to respond by August 27, and Ellis was on notice, pursuant to Court Order, that the Fund was obligated to apply for a default (or to show cause why a motion for entry of default had not been filed) before September 2, 2003.

In response, Ellis argues that its counsel believed, despite the specific warnings to the contrary, that the Fund would grant it additional time to respond to the complaint. To the extent that Ellis claims the Fund acquiesced in its failure to file an answer, the record demonstrates just the opposite. Ellis' conduct therefore does not demonstrate excusable neglect, nor does it provide "good cause" for a set-aside. *See Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 251 (7th Cir.1990) (affirming district court's refusal to set aside entry of default and entry of judgment where plaintiff twice threatened to move for default if an answer was not forthcoming); *Zuelzke,* 925 F.2d at 229 (where there was no showing that defendant was misled by plaintiff into believing that no harm would come to it through its failure

to act, refusal to vacate judgment was proper).[4]

## II. Existence of meritorious defenses

■ When moving to set aside a default, defendant is not required to prove a defense, but only to assert a meritorious defense that it may prove at trial. *Whelan v. Abell,* 48 F.3d 1247, 1259 (D.C.Cir.1995). A defendant's allegations are considered meritorious if they contain "even a hint of a suggestion" which, if proven at trial, would constitute a complete defense, *Keegel,* 627 F.2d at 374, but they must be "good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996). Having thoroughly reviewed Ellis' claimed defenses, the Court concludes that none of them constitutes a complete defense even if they could be proven at trial.

### A. Ellis is bound to the terms of the collective bargaining agreement.

Although not listed among its affirmative defenses in its untimely answer, Ellis asserts in its motions that it has raised meritorious defenses, including the fact that it "has not signed a new collective bargaining agreement since Local Painters Union 195 apparently does not have the new collective bargaining agreement ready for signature." (*See* Mot. for Relief at 3–4.) It is presumably claiming that it is not bound by the contract and its provisions regarding payments to the Fund, because the contract expired by its terms on May 31, 2003. This defense has no merit for several reasons.

First, although the agreement states that it is to be in full force and effect through May 31, 2003, it goes on to state that it shall "continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) days and not more than ninety (90) days prior to any subsequent contract year." (Pl.'s Resp. Ex. 1 at 28.) Ellis has not alleged that such notice was given. Instead, it cites the union's delay in preparation of the new document as the only reason it has not yet signed it. It is, however, clear that any delay by the union is irrelevant since under the automatic renewal clause, defendant is obligated to make its contributions to the plan. *Joyce v. Silveri Tile Co.,* 66 F.Supp.2d 1, 2 (D.D.C.1999); *see also Contempo Design, Inc. v. Chicago & N.E. Ill. Dist. Council of Carpenters,* 226 F.3d 535, 546 (7th Cir. 2000) (because neither the union nor the employer provided written notice to the other party as required by the agreement prior to its expiration, the automatic renewal provision went into effect, and the parties became bound to the new collective bargaining agreement); *United Mine Workers of Am.1974 Pension v. Pittston Co.,* 984 F.2d 469, 473–74 (D.C.Cir.1993) ("The language of the relevant provisions in the applicable trust and collective bargaining agreements unambiguously obliges signatory employers to contribute to the trusts at the rates specified in the current [agreement], irrespective of the employer's failure sign that [agreement]."). Ellis simply cannot rely on its failure to sign a successor agreement to absolve it from its obligations under the agreement.

---

4. Ellis argues that a "reasonable belief" that the action would settle obviates the need for a formal response and provides "good cause" to set aside the default judgment, citing *Gonzalez v. City of New York,* 104 F.Supp.2d 193, 196 (S.D.N.Y.2000). *Gonzalez* does not repre-
sent the majority view, however, and to the extent that it may be applied here, it fails to help Ellis' cause, for the undisputed facts here belie any argument that counsel had a reasonable belief that the case would settle after August 27.

Second, Ellis' conduct demonstrates that it is bound to the agreement. "In the field of labor relations, the technical rules of contract law do not determine the existence of an agreement." *Mack Trucks, Inc. v. Int'l Union, UAW*, 856 F.2d 579, 591–92 (3d Cir.1988); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 649 (7th Cir.2001); *Am. Fed'n of Television & Radio Artists v. Inner City Broadcasting Corp.*, 748 F.2d 884, 887 (2d Cir.1984); *Pepsi–Cola Bottling Co. v. NLRB*, 659 F.2d 87, 89 (8th Cir.1981). Adoption of an enforceable labor contract does not depend on the agreement's reduction to writing; instead, circumstances and conduct reveal the existence of a contract. *See Mack Trucks*, 856 F.2d at 592; *Gustafson*, 258 F.3d at 649; *Inner City Broad.*, 748 F.2d at 887; *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp.*, 724 F.2d 1458, 1459 (11th Cir.1983).

If Ellis' obligations under the contract had expired, it would have been relieved of its duty as of June 1, 2003. It admits, however, that during "late July and August," it forwarded payments and "remittance reports for March through June 2003," and that a recent audit has been conducted. (Mot. to Set Aside at 2–3; Pl.'s Resp. Ex. 6.) Defendant's compliance with the renewed agreement binds it to the agreement. *See Gustafson*, 258 F.3d at 650 (employer that had signed a prior agreement, but not the new one, had a duty to make ERISA plan contributions pursuant to the new agreement where it complied with the new agreement's terms); *Brown v. C. Volante Corp.*, 194 F.3d 351, 354–55 (2d Cir.1999) (employer that did not sign newer agreements was nonetheless bound by them because it submitted remittance reports, cooperated with an au-

dit, and acknowledged its responsibility to the pension funds).

Finally, not only has Ellis failed to assert the alleged non-binding nature of the agreement as a defense in its answer—it has admitted that, at all times relevant to this action, it "was party to or agreed to abide by the terms and conditions" of the collective bargaining agreement with the International Union of Painters and Allied Trades. (*See* Answer ¶ 6; Compl. ¶ 6.)

## B. The liquidated damages clause is enforceable against Ellis.

The default judgment was granted pursuant to section 10.12 of the Pension Plan, to which Ellis is bound through its incorporation into the collective bargaining agreement. Section 10.12 contains a provision providing for judgment of liquidated damages, as well as unpaid contributions, interest, and attorneys fees. (Pl.'s Resp. Ex. 2 § 10.12(b)(3).) One of Ellis' affirmative defenses addresses these damages: "As to the agreement and declaration of trust noted in plaintiff's complaint, defendant states that said document is a contract of adhesion and therefore any liquidated damages and penalties should be a nullity." (Answer at 4.) This defense is not meritorious.

Courts of appeals have unanimously regarded ERISA as imposing a limitation on the defenses available to an employer when sued by an employee benefits plan for failing to contribute. *See, e.g., La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir.1998); *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1443–44 (9th Cir.1995); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir.1992); *Benson v. Brower's Moving & Storage, Inc.*, 907

F.2d 310, 314 (2d Cir.1990).[5] "[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Benson,* 907 F.2d at 314. Since the claim that the contract is one of "adhesion" goes to its enforceability, it is not a valid defense to this action.

Indeed, the very proposition that a collective bargaining agreement may be deemed a contract of adhesion is without merit. *See Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 529 (7th Cir.1986) (refusing to construe a contract as one of adhesion where it was a product of collective bargaining between union and employer); *Waggoner v. Dallaire,* 649 F.2d 1362, 1367 (9th Cir.1981) (district court erred as a matter of law in finding a contract of adhesion because "parties to a collective bargaining agreement are conclusively presumed to have equal bargaining strength"); *Mic–Ron Gen. Contractors, Inc. v. Trs. of New York City Dist. Council of Carpenters Benefit Funds,* 908 F.Supp. 208, 213 n. 3 (S.D.N.Y.1995) (employer cannot dispute its obligations under collective bargaining agreement by condemning the agreement as a contract of adhesion).

Even assuming *arguendo* that Ellis could cast doubt upon the enforceability of the liquidated damages clause, which it cannot, it cannot claim that the Fund may not collect liquidated damages. Under ERISA, Ellis is still obligated to pay liquidated damages on unpaid contributions irrespective of the validity of the contract provision. *See* 29 U.S.C. § 1132(g)(2); *Cent. States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service,*

*Inc.,* 870 F.2d 1148, 1156 (7th Cir.1989) ("Awards of liquidated damages are mandatory in an action in which judgment in favor of the plan is awarded.") (internal quotation omitted).

## C. Ellis' remaining defenses have no merit.

Ellis offers the defense that a court-ordered audit is unnecessary because the Fund has already audited its records. (Answer at 4.) The collective bargaining agreement, however, gives the Fund the right to audit "at any time." (Pl.'s Resp. Ex. 1, Art. XV § 3 ¶ 3.) The Trust Agreement also gives the Fund the right to audit any employer at any time. (Compl. Ex. 1, Art. VI § 6.) ERISA also authorizes the court to require an employer to submit to audits. *See Flynn v. Mastro Masonry Contractors,* 237 F.Supp.2d 66, 70 (D.D.C. 2002) (ERISA provides for "other legal or equitable relief as the court deems appropriate," including "an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records"). The Court's Order requiring that Ellis have its payroll books and related records available for audit within fifteen days of the Fund's request is simply consistent with the parties' agreement. The fact that an audit may have been conducted in the past does not provide Ellis with a viable defense.

Ellis also claims that the Fund is discriminating against it by selectively auditing and allegedly failing to "pursue[ ] any other defendants similarly situated to defendant in relation to any payment issue." (Answer at 4.) The Fund has a right to choose to enforce its contract rights against any employer that is a party to the contract.

---

**5.** The only available defenses are that the contribution provision is illegal; the agreement is void due to fraud in the execution; or

the employees have voted to decertify the union as its bargaining representative. *Agathos,* 977 F.2d at 1505.

Ellis asserts that the Fund has not stated a claim upon which relief can be granted. (Answer at 4.) The Court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). As is clear from the Court's Order granting default judgment, the Fund has properly stated claims for breach of contract and for violations of ERISA.

Finally, Ellis claims as an affirmative defense that the Fund has failed to provide it with information regarding the location from which the fund is administered beyond Washington D.C., allegedly "refusing to answer questions concerning the administration on other areas . . . ." (Answer at 4.) The Court is unaware of any legal authority (and defendant does not cite any) that would obligate the Fund to furnish this information to an employer as a precondition to obtaining relief under the contract or ERISA. Thus, there is no basis for this claim.

## III. Prejudice to plaintiff

■ The Fund claims that it will suffer "substantial prejudice" if the entry of the default judgment is vacated because the "likelihood of successful recovery diminishes rapidly with the passage of time as assets disappear." (Pl.'s Resp. at 24–25.) Although "delay in and of itself does not constitute prejudice," *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 15 (1st Cir.2003), forcing a party to expend further time and money to collect on a claim as to which there are no meritorious defenses unfairly prejudices plaintiff to some degree. *See Owatonna Tool Co. v.*

*Pan Am. Container Corp.*, 1985 WL 1319, at *4 (S.D.N.Y.1985).

■ Furthermore, an absence of prejudice to plaintiff does not in itself entitle defendant to relief from the judgment. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998). The court has discretion to deny a motion to vacate if it is persuaded that the default was willful and that the defaulting party has no meritorious defenses. *McNulty*, 137 F.3d at 738; *see also Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir.1994) (defendant's willful default and the absence of meritorious defenses were sufficient to support the district court's default judgment without a consideration of prejudice to plaintiff); *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir.1993) (the prejudice factor is of lesser importance than the others when considering a motion to vacate a default judgment); *Matter of Dierschke*, 975 F.2d 181 (5th Cir.1992) (when the court finds an intentional failure to file responsive pleadings, it need not find prejudice to plaintiff); *Marziliano v. Heckler*, 728 F.2d 151, 157 (2d Cir.1984) (affirming district court's refusal to set aside default based on willful conduct and lack of meritorious defenses alone).

## CONCLUSION

For the foregoing reasons, the entry of default judgment in the amount of $41,287.50 will not be disturbed, and defendant's motions are denied. A separate Order accompanies this Memorandum Opinion.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is this 27th day of October, 2003, hereby

32

**ORDERED** that Defendant's Motions to Set Aside Entry of Default and for Relief from Default Judgment are **DENIED**; and it is

**FURTHER ORDERED** that the Judgment entered on September 10, 2003 is affirmed.