Theodore KING and Gary La Barbera, as Trustees and Fiduciaries of the Local 282 Pension Trust Fund, the Local 282 Welfare Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund, Plaintiffs,

v.

GALLUZZO EQUIPMENT & EXCAVATING, INC., BTS Construction Corp. and Dominick Galluzzo, Defendants.

No. 00–CV–6247ILG.

United States District Court, E.D. New York.

July 9, 2004.

Michael L. Winston, Peter L. Zwiebach, Cohen, Weiss and Simon LLP, New York City, for plaintiffs.

Jane Lauer Barker, Pryor, Cashman, Sherman & Flynn LLP, Stuart Komrower, Cole, Schotz, Meisel, Forman & Leonard, P.A., New York City, for defendants.

### MEMORANDUM & ORDER

GLASSER, District Judge.

This motion to vacate the default judgment arises out of a claim by plaintiffs, Theodore King and Gary LaBarbera, in their capacity as trustees for various trust funds of Local 282, International Brotherhood of Teamsters ("Local 282"), alleging that defendants Galluzzo Equipment & Excavating ("Galluzzo Equipment"), BTS Construction Corp. ("BTS"), and Dominick Galluzzo ("Galluzzo"), failed to make required contributions to the Local 282 trusts. Plaintiffs brought this claim pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). A default judgment was entered against defendants on May 9, 2003. Almost one year later, on

March 24, 2004, defendants brought this motion to vacate the default judgment. For the reasons set forth below, this motion is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about September 9, 1998, Galluzzo Equipment executed a New York City Heavy Construction & Excavating Contract with Local 282 ("1998 contract"), which was to be in effect through June 20, 1999. The 1998 contract was later extended through June 30, 2002. Around the time that the 1998 contract was extended, Galluzzo Equipment was provided with a copy of a contract between it and Local 282 for the period 1999–2002 ("1999 contract"). According to defendants, the 1999 contract was not signed by Galluzzo or by any representative of Galluzzo Equipment or BTS. On or about March 31, 2000, Local 282 commenced an ERISA action against defendants for unpaid contributions, *King, et al. v. Galluzzo Equipment & Excavating, Inc.*, No. CV 00 1889 ("Prior Action"). Galluzzo Equipment failed to answer the complaint or appear in the Prior Action; plaintiffs moved for a default judgment, which was entered against Galluzzo Equipment on June 29, 2000. A satisfaction of judgment in the Prior Action was filed by the plaintiffs on April 18, 2001.

Plaintiffs filed this action on October 18, 2000, alleging that Galluzzo Equipment and its controlling officer, Galluzzo, engaged in a scheme in which an alter-ego corporation (BTS) was used to employ and pay a number of employees covered by the 1998 Contract. The complaint further alleges that, as a result of this scheme, the Remittance Reports submitted to the Funds for each month from September 1998 through July 2000 misrepresented the number of hours worked by employees covered by the 1998 Contract. According to plaintiffs, as a result of the misrepresentations, the contributions to the Funds for these months were substantially lower than what was actually owed.

Defendants were originally represented in this action by Herrick Feinstein, LLP ("Herrick Feinstein"). Defendants filed an answer and later moved for partial summary judgment on the grounds of insufficient service of process and *res judicata*. Their motion was denied in its entirety. *See King v. Galluzzo Equipment & Excavating, Inc.*, 2001 WL 1402996, at *1 (E.D.N.Y. Nov. 8, 2001). According to plaintiffs, following the denial of summary judgment, plaintiffs attempted to proceed with discovery but defendants refused to respond to discovery requests.

When defendants fell behind in payment of their legal bills, Herrick Feinstein moved to be relieved as counsel and their motion was granted on July 9, 2002. In granting that motion, this Court warned that the corporate defendants had to retain new counsel by August 6, 2002, that Galluzzo would be deemed to be appearing *pro se* if he did not retain new counsel, and that all defendants risked default judgment. Defendants did not retain new counsel nor did they request an extension of time to do so. Plaintiffs subsequently filed a default application with the Court on April 3, 2003, copies of which were served on all defendants who had not even by then retained new counsel. By letter dated April 16, 2003, copies of which were also sent to defendants, plaintiffs confirmed with the court that a hearing on the default application would take place on May 9, 2003. Defendants did not attend the default hearing and on May 9, 2003, a default judgment was entered against them, jointly and severally, in the amount of $338,711.80. According to plaintiffs, this amount was based on an estimated audit and on the trust agreements, and included interest, liquidated damages, audit fees, and attorney's fees and costs. All defendants were served with the default judgment on September 12, 2003.

According to plaintiffs, defendants failed to respond to plaintiffs' post-judgment discovery requests until plaintiffs sought judicial intervention in a New Jersey state court. Defendants eventually retained new counsel and filed this motion to vacate the default judgment on March 24, 2004.

## DISCUSSION

I. Legal Standard

▉ Rule 60(b) of the Federal Rules of Civil Procedure provides, in pertinent part,

that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... [because of] mistake, inadvertence, surprise or excusable neglect." In the Second Circuit, courts evaluate whether to grant such motions by weighing three criteria: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir. 1983). "An application for relief under 60(b) 'shall be made within a reasonable time ... not more than one year after the judgment ... was entered or taken.'" *Sasso v. M. Fine Lumber Co., Inc.,* 144 F.R.D. 185, 188 (E.D.N.Y.1992) (quoting F.R.C.P. 60(b)). "Proper application of the rule strikes a balance between serving the ends of justice and preserving the finality of judgments." *Id.* (quoting *House v. Sec'y of Health & Human Servs.,* 688 F.2d 7, 9 (2d Cir.1982)).

▮ A motion under Rule 60(b) is addressed to the sound discretion of the trial court. *Velez v. Vassallo,* 203 F.Supp.2d 312, 333 (S.D.N.Y.2002). On a motion to set aside a default judgment, the defaulting party bears the burden of proof, *see In re Martin–Trigona,* 763 F.2d 503, 505 n. 2 (2d Cir.1985), but doubts should be resolved in favor of the party seeking relief. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993). Because Rule 60(b) allows extraordinary relief, it should be invoked only if the moving party meets its burden of demonstrating "exceptional circumstances." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994); *see also Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 853 (E.D.N.Y.1995) (Glasser, J.).

## II. Willfulness

▮ Defendants argue that their default was not willful but was a result of their inability to retain new counsel and Galluzzo's mistaken belief that defendants were unable to oppose the application for a default judgment. Plaintiffs, however, point to four facts that demonstrate that defendants were acting willfully and with knowledge of the default and its consequences: (1) this Court's order dated July 9, 2002 requiring the corporate defendants to obtain counsel by August 6, 2002 or risk default; (2) plaintiffs' default application of April 3, 2003, copies of which were sent to defendants; (3) defendants' absence at the default hearing; and (4) defendants' failure to respond to plaintiffs' pre- and post-judgment discovery requests. "The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.,* 288 F.Supp.2d 22, 26 (D.D.C.2003) (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 634 (2d Cir.1998), *cert. denied,* 525 U.S. 1106, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57 (2d Cir.1996) (filing mistake by clerk for defendant's in-house counsel not willful but weighs somewhat against granting relief). Defendants' actions here bespeak a deliberate decision to default, rather than excusable neglect.

▮ Defendants contend first that Galluzzo's lack of sophistication resulted in their failure to respond to plaintiffs' default application. Lack of sophistication, however, is no excuse for a defendants' default. *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.,* 105 F.R.D. 113, 116 (S.D.N.Y. 1985) ("the lack of legal sophistication on the part of a corporation and its principal simply cannot form the basis of a claim of excusable neglect or fraud for purposes of Rule 60(b)"); *ILGWU Nat'l Retirement Fund v. Empire State Mills Corp.,* 696 F.Supp. 885, 887–88 (S.D.N.Y.1988) (same). Moreover, defendants' claim of ignorance about the consequences of a default judgment is belied by the fact that the Prior Action also ended with the entry of a default judgment against defendants. In addition, Galluzzo had the opportunity in this action to consult with highly competent counsel who filed both an answer and a motion for summary judgment. "A party's decision to ignore the dangers attendant to litigation cannot serve to excuse his

default." *Original Appalachian Artworks,* 105 F.R.D. at 116.

Furthermore, defendants' inability to hire new counsel does not serve as an excuse for default. "[W]here a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable." *Original Appalachian Artworks,* 105 F.R.D. at 116. Here, it is clear that defendants had more than adequate notice that a default was to be entered against them and nevertheless failed to appear or notify the court of any difficulty in retaining counsel. *Cf. Traguth v. Zuck,* 710 F.2d 90 (2d Cir.1983) (defaulting individual defendant had written to court asking assistance in obtaining counsel and describing her position in lawsuit). That defendants could not afford attorney's fees does not justify their "complete disregard of the rules of the court or [their] failure to notify the court of [their] predicament." *ILGWU,* 696 F.Supp. at 888 (citing *Original Appalachian Artworks,* 105 F.R.D. at 116; *Usery v. Weiner Bros., Inc.,* 70 F.R.D. 615, 617 (D.Conn. 1976) (defendant's decision that attorney's fees were too high to warrant retaining counsel did not justify failure to appear); *Rinieri v. News Syndicate Co.,* 385 F.2d 818, 823 (2d Cir.1967) ("If a party lacks funds it is not given to him to decide ex parte that he is justified in not prosecuting his suit and is thus free to ignore the rules of the courts."))

Defendants have failed to demonstrate that their default was a result of excusable neglect, rather than willfulness. *See Eagle Assoc. v. Bank of Montreal,* 926 F.2d 1305, 1310 (2d Cir.1991) (district court properly entered default judgment against defendant partnership when partnership willfully disregarded court's order to appear through counsel rather than a layperson). As such, this factor weighs strongly in favor of plaintiffs.

III.  Meritorious Defenses

Defendants present several defenses that they claim would entitle them to relief on the merits, including that the default judgment overstates the amount of delinquent contributions, that Galluzzo cannot be held personally liable under ERISA, and that plaintiffs submitted inadmissible evidence to establish the amount of judgment. Furthermore, defendants argue that due to the judgment obtained in the Prior Action, plaintiffs' claims are barred by *res judicata.* As an initial matter, on defendants' motion for summary judgment, this Court determined that plaintiffs' claims were not barred by *res judicata* because defendants had fraudulently concealed information. *See King v. Galluzo Equipment & Excavating, Inc.,* 2001 WL 1402996, at *1 (E.D.N.Y. Nov. 8, 2001). The defense of *res judicata* is no more meritorious being brought in a motion to vacate a default judgment than it was at the summary judgment stage.

Defendants further argue that Galluzzo may not be held personally liable because he was not an employer within the meaning of ERISA, nor was he a party to the 1998 Contract. "[T]o the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA." *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 388 (2d Cir. 1989); *NYSA–ILA Medical & Clinical Servs. Fund v. Catucci,* 60 F.Supp.2d 194, 206 (S.D.N.Y.1999) ("Even an individual defendant who ... enjoys a dominant role in the affairs of a corporate employer will not be liable for the corporation's delinquent fund contributions where he did not act in concert with a fiduciary to breach a fiduciary obligation, he did not commit fraud, and there is no claim and no basis in the record to support a claim that ... defendant is the corporation or its alter ego.") Defendants merely assert in a conclusory fashion that "the delinquent contributions were not the result of fraud." (Def. Mem. at 11.) Nevertheless, they provide no evidence that Galluzzo did not act in concert to breach the contribution obligations, did not commit fraud, or is not the corporation or its alter ego. Although the defendant need not conclusively establish the validity of the defense asserted in order to prevail on the motion, *see Davis,* 713 F.2d at 916, "in light of the defendant's prolonged and uncooperative course of conduct, as well as his unreasonable delay in bringing this application, the. defense he asserts here is

inadequate grounds upon which to reopen the final judgment." *Sasso,* 144 F.R.D. at 191.

■ Defendants further argue that the default judgment was based on an estimate that overstates the amount of delinquent contributions and that plaintiffs did not provide the court with the content of the trust agreements, but rather, relied on the declaration of counsel to state the damages owed. Plaintiffs respond that the trust agreement was, in fact, part of the record of the case and that the estimated contribution was supported by a declaration of plaintiffs' auditor, as well as by plaintiffs' counsel. Defendants cannot now be heard to complain that the amount of the judgment was incorrectly calculated when they consistently refused to respond to discovery requests and to plaintiffs' application for a default judgment. *Sasso,* 144 F.R.D. at 190 ("it may well be true that had defendant … not sat on his hands and instead defended this action, some legal issue might have presented itself"); *Solomon v. 318 Fashion, Inc.,* 1994 WL 702008, at *2 (S.D.N.Y. Dec. 14, 1994) (although meritorious defense was presented, court declined to vacate the judgment because defendant did not meet burden of showing that his behavior was excusable and not willful). Such meritorious defenses as defendants now, nearly a year later, claim they have, they chose not to present when they could have, but chose, instead, to forego them by default. This factor favors the plaintiffs.

## IV. Prejudice to Plaintiffs

■ The final element a court should consider in determining whether to vacate a default judgment is the level of prejudice the non-defaulting party will suffer if the motion to vacate is granted. This may be shown if the party's "ability to pursue the claim has been hindered since the entry of the judgment" or by "the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Farrell v. County Van & Storage, Inc.,* 1996 WL 705276, at *3 (E.D.N.Y. Nov. 25, 1996) (Glasser, J.) (quoting *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 657 (3d Cir.1982)). Nevertheless, "delay alone is not a sufficient basis for establishing prejudice." *Davis,* 713 F.2d at 916.

Plaintiffs argue that they will be prejudiced because this case was filed nearly four years ago and would be difficult to prove now. Plaintiffs' claim of prejudice is further supported by defendants' repeated failure to cooperate with plaintiffs' pre- and post-judgment discovery requests. *See Trustees of Tapers' Ins., Annuity & Pension Funds v. Albee Drywall Partitions Corp.,* 1996 WL 294306, at *5 (S.D.N.Y. June 3, 1996) (prejudice where plaintiffs would have to proceed with a lengthy trial and defendants had never responded adequately to discovery requests); *Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 541 (S.D.N.Y.1985) (prejudice where vacating judgment against defendant with history of failing to respond to discovery requests "would provide defendant an additional opportunity for stonewalling and even for disposing of additional evidence"). Because plaintiffs would be prejudiced if the default judgment they obtained against defendants were to be vacated, this factor weighs in plaintiffs' favor. *See Sasso,* 144 F.R.D. at 190 (in ERISA case, plaintiffs' "diligent efforts met largely with reluctance on the part of the defendant, and should not now serve as a basis for allowing the defendant further to delay plaintiffs' recovery").

Defendants have not met their burden to prove any exceptional circumstances that would warrant vacating the default judgment against them. As such, defendant's motion is denied.

## V. Plaintiff's request for sanctions

■ In its response to defendants' motion to vacate the default judgment, plaintiffs request costs and attorney's fees incurred in opposing defendants' motion. A motion for sanctions under Federal Rule of Civil Procedure 11(c) must be made separately from other motions or requests and must specify the conduct alleged to violate Rule 11(b). *See Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 141–42 (2d Cir.2002). Because plaintiffs' request for sanctions was not made separately from its opposition to defendants' motion, it is procedurally flawed and must be denied.

## CONCLUSION

For the foregoing reasons, this Court denies defendant's motion to vacate the default judgment previously entered in this action.

SO ORDERED.