COLLIER J.,
dissenting in part.
I concur with the majority’s conclusions the district court did not clearly err in finding TLG was the alter ego of IES and IES was not entitled to restitution. Unlike the majority, I would affirm the district court in its decision IES failed to unequivocally communicate its intent to terminate the CBA. Therefore, I must respectfully dissent from that portion of the opinion.
As the majority states, “Congress intended through ERISA to ‘give [covered] plans the upper hand in ... litigation in order to permit “efficacious[ ]” recovery of “delinquent contributions,” ’ ” Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A & H Mech. Contractors, Inc., 100 Fed.Appx. 396, 402 (6th Cir.2004) (quoting 126 Cong. Rec. 23,039 (1980)). Section 515 “permit[s] multiem-ployer plans to ‘rely upon the terms of collective bargaining agreements and plans as written, thus “permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management law.” ’ ” Bakery & Confectionary Union & Indus. Int’l Health Benefits & Pension Funds v. New Bakery Co. of Ohio, 133 F.3d 955, 959 (6th Cir.1998) (quoting Cent. Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir.1996)). The reason Congress gives this advantage to these covered plans is because “employee benefit plans frequently remain obligated to pay benefits to employees even when employers do not make their required eontributions[.]” *296 Plumbers & Pipefitters, 100 Fed.Appx. at 402.
An employer can terminate its obligations under a CBA only “if it (1) unequivocally withdraws from the association (2) ... before negotiations for a new contract begin (3) by communicating the intent to withdraw to all parties.” Id. at 400 (quoting Sheet Metal Workers’ Int’l v. Herre Bros. Inc., 201 F.3d 231, 244 (3d Cir.1999)). Although a court may conduct a “superficial inquiry” into a purported termination to determine if it was timely and conveyed the requisite intent, “if the issue of termination cannot be resolved through cursory review, the defense to a section 515 action will not succeed.” La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co., 157 F.3d 404, 409 n. 12 (5th Cir.1998).
The majority concludes the March 28, 2003 letter from Julian Llamas to Scott Covington suffices to unequivocally communicate IES’s intent to terminate the CBA. This is where I must part company. The majority’s position is a reasonable interpretation of the letter but there are other reasonable interpretations including that IES was merely positioning itself for more acceptable terms. Because there are other equally reasonable interpretations of the language, I cannot agree the language is unequivocal. The standard by which termination notices must be judged is strict because Congress intended to allow employee benefit plans to rely on the language without having to resort to litigation. Thus, courts require unequivocal language in conveying an intent to terminate. If there is any doubt as to the intent to terminate, the notice fails.
Because I find the language used by IES in its notice does not unequivocally convey its intent to terminate the CBA, I would affirm the district court’s grant of summary judgment and would find IES was bound by the 2003 to 2006 CBA. Therefore, I respectfully dissent from that portion of the majority opinion.